In re M.J. SHOEARAMA, INC., d/b/a M.J. Corporation, t/d/b/a M.J. Marx, Debtor.

Joseph P. NIGRO, Trustee, Plaintiff,

v.

OXFORD DEVELOPMENT COMPANY, Defendant.

Bankruptcy No. 87–1469–BM.
Adv. No. 90–0578–BM.

United States Bankruptcy Court,
W.D. Pennsylvania.

March 11, 1992.

Joseph P. Nigro, Nigro & Malley, Pittsburgh, Pa., trustee.

Stephen A. Neustein, Pittsburgh, Pa., for plaintiff, trustee.

Robert A. Galanter, Phillips & Galanter, P.C., Pittsburgh, Pa., for defendant.

## MEMORANDUM OPINION

BERNARD MARKOVITZ, Bankruptcy Judge.

Before the Court is an action brought by the trustee against Oxford Development Company ("defendant") for an alleged violation of the automatic stay. Defendant locked debtor out of its place of business prior to the filing of the bankruptcy petition and took possession of debtor's inventory and store fixtures. Subsequent to the filing of debtor's bankruptcy petition, defendant disposed of the inventory and fix-

tures without first seeking authorization of this court to do so. The trustee maintains that defendant's action of disposing of estate assets was a willful violation of the automatic stay and seeks to recover the value of same, attorney's fees and costs, and punitive damages.

Defendant denies that it violated the automatic stay. According to defendant, it disposed of the inventory and fixtures with the implied consent of the first trustee. Defendant alternatively maintains that the successor trustee is equitably estopped and judicially estopped from seeking to recover damages for any violation of the automatic stay that may have occurred. Defendant also has brought a counterclaim in which it seeks to recover costs incurred by it in protecting and preserving the property up to the time that it disposed of the property.

Judgment will be entered in favor of the trustee and against defendant in the amount of $5,850.00.

## I

### FACTS

Debtor operated a retail shoe business located in Village Square Mall in Bethel Park, Pennsylvania. The premises on which its business was located were leased by debtor from defendant. Debtor failed to pay its rent early in 1987. In March of 1987, defendant gave debtor written notification that it would exercise its rights under the lease if the default in the rental payments was not cured by April 15, 1987.

When debtor failed to meet the April 15, 1987 deadline, defendant padlocked the premises and took possession of all the inventory and fixtures located in the store. Debtor was denied further access to or use of the premises or its inventory and fixtures.

An inventory of the contents of the store was conducted by defendant on April 22, 1987. Early in May of 1987, an employee of debtor was permitted to enter the premises and to retrieve credit card receipts and phone bills. He was not permitted to remove any of debtor's inventory or fixtures. The inventory and fixtures in the store were moved by defendant on May 8, 1987 to a storage area located elsewhere in Village Square Mall.

On June 3, 1987, debtor filed a voluntary chapter 7 petition. A trustee was appointed the next day. At the time the bankruptcy petition was filed, all of debtor's property was subject to a perfected security interest in favor of Union National Bank ("UNB") in the approximate amount of $110,000.00. The schedules attached to debtor's bankruptcy petition listed the value of the inventory as $42,116.00 and the value of the fixtures as $15,200.00.

On July 8, 1987, an individual brought to Village Square Mall by the trustee inspected the inventory and fixtures and offered to purchase everything for $500.00. The trustee concluded that the property was encumbered and of no significant value to the estate and took no action with respect to the offer.

The debt owed by debtor to UNB had been guaranteed by Morton Rubin and Jeffrey Rosenthal, debtor's principals. On December 11, 1987, Rubin and Rosenthal satisfied the obligation to UNB. Three (3) days later, on December 14, 1987, counsel to debtor sent a letter to the trustee in which Rubin and Rosenthal offered to purchase all of the inventory for $750.00. The letter gave no indication that the obligation to UNB had been satisfied by them. The next day, UNB filed appropriate documents with the Prothonotary releasing UNB's security interest in debtor's property.

On December 17, 1987, counsel to defendant sent a letter to the trustee advising him that the property in question presently under defendant's control would be disposed of within ten (10) days unless the trustee indicated otherwise. The trustee did not respond to the letter.

On April 11, 1988, Jeffrey Rosenthal sent a letter to the United States Trustee advising the United States Trustee that Rosenthal had made an offer to purchase debtor's property and requesting a meeting to discuss the trustee's handling of the case.

Defendant eventually disposed of the inventory and fixtures in June of 1988. A portion of it was donated to charitable organizations. The remainder was discarded.

Neither defendant nor defendant's bankruptcy counsel filed a motion for relief from stay or to compel the trustee to perform his duties or to abandon debtor's property before defendant disposed of the property.

The United States Trustee sent letters to the trustee on June 14, 1988, and again on July 27, 1988, asking the trustee to respond to Rosenthal's letter of April 11, 1988. When the trustee failed to honor its request, the United States Trustee filed a motion to compel the trustee to perform his duties as set forth at 11 U.S.C. § 704(7) and to respond to Rosenthal's letter. The motion was granted on January 10, 1989. The trustee was ordered by this court to respond by February 10, 1989.

Apparently in response to the January 10, 1989 Order, the trustee filed a motion of proposed abandonment of the property on February 10, 1989. In same, he averred that, because the value of UNB's security interest in debtor's inventory and fixtures exceeded their value, disposition of the assets would be burdensome to the estate and would be of no value to it. Debtor filed an objection to the motion which stated on the record for the first time that the debt owed to UNB has been "paid off by the Debtor's officers" and which denied that disposition of the assets would be burdensome and of no value to the estate.

In an effort to ascertain the true status of the matter, the court determined that the motion for abandonment would be denied. The order issued by the court on May 23, 1989, directed the trustee to conduct an investigation as to the whereabouts of debtor's assets and to report to the court within thirty (30) days. The order of May 23, 1989 regrettably did not result in any improvement in the trustee's handling of this bankruptcy case. He failed to report to the court as directed.

On July 18, 1989, the United States Trustee filed a motion pursuant to 11 U.S.C. § 324 to remove the trustee from this case. The motion was granted after a hearing on August 22, 1989. A successor trustee was appointed the next day.

UNB executed a document on January 18, 1990, which acknowledged that Rubin and Rosenthal had satisfied the debt owed to it and which acknowledged that Rubin and Rosenthal were subrogated to UNB's claim against debtor.

On March 20, 1990, the successor trustee brought a motion against the former trustee's bond in the amount of the value of the property which had been disposed of by defendant. It was alleged that the former trustee had failed to perform his statutory duties by not acting reasonably to preserve and protect estate assets and in not closing debtor's estate as expeditiously as possible. For reasons unclear to the court, the successor trustee requested that the motion be withdrawn. The court, assuming the successor trustee had a plan that would bring order to this chaos, granted the request to withdraw the motion. This withdrawal was approved with reluctance and without prejudice.

On October 30, 1990, debtor filed a motion for leave to amend its bankruptcy schedules to reflect a higher value for the inventory and store fixtures. Leave was sought to raise the declared value of the inventory from $42,116.00 to $71,302.00 and the declared value of the fixtures from $15,200.00 to $16,770.70. The motion was granted over defendant's objection after a hearing on December 11, 1990. The order entered provided, however, that granting the motion to amend did not constitute a determination by the court as to the actual value of the inventory and fixtures.

Ten (10) days later, on December 21, 1990, the successor trustee brought the action against defendant which is before the court at this time.

## II

## VIOLATION OF THE AUTOMATIC STAY

The automatic stay provided for at 11 U.S.C. § 263(d/a) is "one of the fundamental debtor protections provided by the bankruptcy law". 1978 U.S.Code Cong. & Admin.News 5787, 5963, 6269. In addition to giving the debtor a "breathing spell", the automatic stay protects creditors by providing them with equal treatment. *H & H*

*Beverage Distributors v. Dept. of Revenue,* 850 F.2d 165, (3d Cir.1988), *cert. denied,* 488 U.S. 994, 109 S.Ct. 560, 102 L.Ed.2d 586 (1988). It ensures that claims against a debtor's estate are resolved in an orderly fashion in accordance with the Bankruptcy Code and prevents a chaotic and uncontrollable scramble for the debtor's assets in a variety of uncoordinated proceedings in different courts. *In re Holtkamp,* 669 F.2d 505, 508 (7th Cir.1982).

The successor trustee maintains that the action of defendant in disposing of the inventory and fixtures in June of 1988 was in violation of 11 U.S.C. § 362(a)(3), which provides that the filing of a bankruptcy petition:

> ... operates as a stay, applicable to all entities, of—
>
> ....
>
> (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate ...

Although defendant unquestionably did exercise control over estate property when it retained possession of and eventually disposed of the inventory and fixtures, it nonetheless denies that it violated the automatic stay in so doing. Defendant has raised several arguments in the nature of affirmative defenses in support of its position.

■■■■ Defendant insists that it acted at the behest of and with the consent of the former trustee when it disposed of estate property. As has been noted, the former trustee failed to respond to defendant's letter of December 17, 1987, which stated that the property would be disposed of unless the trustee indicated otherwise within ten (10) days. According to defendant, the former trustee impliedly directed and consented to the disposal of the property when he failed to respond to the letter.

This position is without merit. Abandonment of estate property is governed by 11 U.S.C. § 554, which provides in pertinent part as follows:

> (a) *After notice and a hearing,* the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate.
>
> (b) On request of a party in interest and *after notice and a hearing,* the court may order the trustee to abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate.
>
> ....
>
> (d) Unless the court orders otherwise, property of the estate that is not abandoned under this section and that is not administered in the case remains property of the estate. (Emphasis added.)

This provision of the Code is supplemented by Bankruptcy Rule 6007(a), which states in pertinent part that: "Unless otherwise directed by the court, the trustee ... shall give notice of a proposed abandonment ... to all creditors ...".

■■ ■ some districts it has been held that estate property may, under certain circumstances, be "administratively abandoned"—i.e., abandoned without judicial involvement and a court order. *Matter of Killebrew,* 888 F.2d 1516, 1522 n. 16 (5th Cir.1989). This practice has never been sanctioned in the Western District of Pennsylvania. In the minority of districts wherein the practice is condoned, *notice* of the proposed abandonment must be provided to all creditors and/or parties in interest in order for abandonment to have any legal effect. *Sierra Switchboard Co. v. Westinghouse Electric Corp. (In re Sierra Switchboard Co.),* 789 F.2d 705, 709 (9th Cir.1986). No notice was provided in this case to all creditors and/or parties in interest that the trustee proposed to administratively abandon the property. To the contrary, during the time frame material to this issue, no evidence was offered indicating that the trustee had decided on that course of action. The trustee may have been "contemplating great things"; however, he was giving no thought to this ■■■

■■ Defendant makes much of the fact that it was in the unenviable position of having control over estate property which

the former trustee, by his inaction, had failed to dispose of. Specifically, defendant notes that the lease expired as a matter of law sixty (60) days after entry of the order for relief and notes that the former trustee took no action with respect to the property. According to defendant, it was in the unfortunate position of having to incur the ongoing cost of storing property which both it and the trustee considered to be worthless.

Such circumstances, although regrettable, do not excuse or justify defendant's unilateral action in disposing of the property. Defendant easily could have presented a motion to the court requesting an order directing the trustee to abandon the property. *See* 11 U.S.C. § 554(b). Had such a motion been presented, the court almost certainly would have granted it. Counsel to defendant erroneously (and perhaps arrogantly) assured defendant that it could resort to self help. Clearly that advice was wrong and equally clearly this court does not wish to encourage or condone this procedure.

B.) Defendant also argues that the successor trustee is equitably estopped from bringing this action for damages against it. As has been noted, the former trustee concluded that the property in question was of inconsequential value or significance to the bankruptcy estate. The successor trustee, however, is taking an inconsistent position and is asserting that the property had substantial value. According to defendant, the successor trustee should be equitably estopped from seeking damages for a "merely technical" violation of the automatic stay.

■ Equitable estoppel is "triggered" by "conduct of one person inconsistent with the position later adopted by him which is prejudicial to the rights of another who relied on such conduct to his detriment." *In re Penn–Dixie Industries, Inc.*, 32 B.R. 173, 178–79 (Bankr.S.D.N.Y.1983) (*quoting In re LaDifference Restaurant, Inc.*, 29 B.R. 178–182 (Bankr.S.D.N.Y.1983, *aff'd*, 63 B.R. 819 (S.D.N.Y.1986)). Defendant must show the following in order to prevail under this doctrine: (1) a material

representation; (2) reasonable reliance upon that representation; and (3) damage resulting from that representation. *Gridley v. Cleveland Pneumatic Co.*, 924 F.2d 1310, 1319 (3rd Cir.1991). It is necessary that the conduct of the party against whom estoppel is invoked intentionally mislead the party invoking estoppel and that the party invoking estoppel lack the means of ascertaining the truth. *In re Richard Buick, Inc.*, 126 B.R. 840, 847 (Bankr. E.D.Pa.1991).

Defendant's reliance upon the doctrine of equitable estoppel fails for several reasons.

In the first place, no showing was made that the former trustee intentionally misled defendant. Plaintiff can concede for the sake of this discussion that the trustee was negligent and that he should have responded to defendant's counsel's letter of December 17, 1987. In spite of these concessions, without more, an intent to mislead is not proved.

■ Moreover, defendant has not shown that the former trustee ever represented to it that he was abandoning the property in question in accordance with the Bankruptcy Code. Any belief by defendant that the former trustee had abandoned the property was improperly inferred by it from the trustee's inactivity.

■ Finally, even if the former trustee did indeed represent to defendant that he had authority to and was administratively abandoning the property, defendant's reliance upon that representation was not reasonable or justified. As has been noted, proposed abandonment of estate property requires that all creditors and parties in interest receive prior notice thereof. Defendant is a sophisticated lessor who routinely retains legal counsel to assist it in bankruptcy proceedings involving its lessees. Defendant's counsel is no stranger to bankruptcy proceedings, coming from a firm that regularly practices in this court and has a trustee in good standing on the U.S. Trustee panel. He and it should have known that reliance upon any representation by the former trustee that the property had been administratively abandoned

was unjustified and that notice to all affected parties was required. Defendant and counsel knew or should have known that administrative abandonment is not practiced in this district.

C.) Defendant also maintains that the successor trustee is *judicially* estopped from bringing the present action against it because of statements made by the successor trustee in a prior proceeding in this case.

The successor trustee brought a motion in March of 1990 against the former trustee's bond because the former trustee allegedly had failed to perform his mandated duties as trustee. At the hearing held on the motion on May 29, 1990, the successor trustee asked that the motion be withdrawn. While stating the reason for withdrawing the motion, the successor trustee asserted that he did not believe that there was any cause of action against defendant for disposing of the property because it "never came into the estate". (Tr. p. 6). Defendant claims that the court accepted this assertion in granting the request to withdraw the motion. According to defendant, the successor trustee therefore is judicially estopped from bringing the present action against it.

■ The doctrine of judicial estoppel is designed to prevent a party from playing "fast and loose" with the court. *Lawrence v. United States I.C.C.*, 629 F.Supp. 819, 822 (E.D.Pa.1985). It is meant to protect the judiciary, as an institution, from perversion of its process. *Edwards v. Aetna Life Insurance Co.*, 690 F.2d 595, 599 (6th Cir. 1982).

■ Judicial estoppel applies only where a party has *successfully* asserted an inconsistent position in a prior hearing. *City of Kingsport v. Steel & Roof Structures, Inc.*, 500 F.2d 617, 620 (6th Cir.1974). That party must have persuaded the court to accept its position in the prior hearing. "Acceptance" in this context requires that its position was *adopted* by the court. *Edwards*, 690 F.2d at 599 n. 5.

Defendant's contention that the successor trustee is judicially estopped from bringing the present action against it because of remarks made by him at the hearing on May 29, 1990, is without merit. Its description of what happened at that proceeding is not supported by the record.

Careful review of the official transcript of that proceeding makes it abundantly clear that the court did *not* accept the assertion of the successor trustee that he had no cause of action against defendant for disposing of the property. To the contrary, the court repeatedly expressed its reservations concerning the basis provided by the trustee for this assertion. The request to withdraw the motion against the former trustee was granted with reluctance because there was no objection to the request by any party in interest, and not because the court accepted the assertion of the successor trustee that there was no cause of action against defendant for disposing of the property. This court merely determined that he was a judicial officer mandated to decide matters brought to him for determination as opposed to a ministry of justice. If no litigant brought or was willing to pursue a cause of action, the court felt constrained to permit the matter to be withdrawn.

Defendant has raised a host of other defenses to the claim that it violated 11 U.S.C. § 362(a)(3). These defenses are too numerous to be discussed individually. The court has considered them and concludes that they are without merit.

Defendant violated 11 U.S.C. § 362(a)(3) in June of 1988 when it unilaterally disposed of the inventory and fixtures remaining in debtor's place of business at the time it was padlocked. It exercised control over property of the estate when it disposed of estate property.

### III

### DAMAGES

It remains to be determined what damages, if any, are to be assessed against defendant for its violation of the automatic stay.

The successor trustee seeks actual damages, including attorney's fees and costs,

and punitive damages pursuant to 11 U.S.C. § 362(h), which provides that:

[a]n individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorney's fees, and, in appropriate circumstances, may recover punitive damages.

 Actual damages are in order pursuant to § 362(h) when: (1) the offending party had knowledge of the automatic stay; and (2) the action taken in violation of the automatic stay was intentional. *In re Atlantic Business and Community Corp.*, 901 F.2d 325, 327 (3d Cir.1990). Specific intent is not required for a violation of the automatic stay to be "willful". Moreover, a good faith belief by the party violating the automatic stay that it had a right to do what it did is not relevant to whether the act was "willful" or to whether compensation is to be awarded. *In re Atlantic Business and Community Corp.*, 901 F.2d at 327.

 Something more than a bare violation of the automatic stay is required before punitive damages are appropriate under § 362(h). *Cochetti v. Desmond*, 572 F.2d 102, 106 (3d Cir.1978). Punitive damages may be appropriate where the violation was in bad faith. *In re Atlantic Business and Community Corp.*, 901 F.2d at 327. Several factors may be relevant in determining whether punitive damages are appropriate:

(1) the nature of the offending party's conduct;

(2) the offending party's ability to pay damages;

(3) the motive of the offending party; and

(4) any provocation by the debtor.

*In re B. Cohen & Sons Caterers, Inc.*, 108 B.R. 482, 487 (Bankr.E.D.Pa.1989).

There is a dispute as to the amount and value of the inventory and fixtures in debtor's place of business when it was padlocked.

The trustee claims that there were between 6,000 and 8,000 pairs of shoes in the store, as well as 100–200 ladies' handbags, 400–500 pairs of women's hosiery, assorted pieces of costume jewelry, and various and sundry fixtures. According to the trustee, the inventory was worth $60,000 to $100,000 and the fixtures were worth $17,000.

Defendant denies that there was as much inventory as the trustee claims and denies that the inventory had any significant value. Specifically, defendant claims that there were only 1,400 pairs of shoes in the store, denies that there were any handbags or costume jewelry. It denies that there was any hosiery except for a few pairs that looked as though they had been worn. As for the fixtures, defendant maintains that they had little or no value because they were of inferior quality and in poor condition.

The court has reviewed the testimony offered by both sides and finds that offered by defendant to be more credible. There were at most approximately 1,400 pairs of women's shoes consisting of odd sizes and colors. Moreover, many of the shoes did not have mates and were seriously out of style. One of defendant's witnesses described some of the shoes as having "wings" on them. There were no women's handbags, no costume jewelry, and no women's hosiery except for a few pairs that had been worn. The fixtures that were in the store were of poor quality and were in poor condition. All items of value apparently were surreptitiously removed by debtor's principals prior to defendant's padlocking of the premises.

 The testimony offered by the trustee that the shoes alone had a value between $60,000 and $100,000 is wildly implausible in light of the fact that they consisted of odd sizes and colors and were out of style. The most reliable evidence as to the value of the property in the store is the offer made to the former trustee on December 14, 1987 by Rubin and Rosenthal, debtor's principals, to purchase everything in the store for $750.00. The testimony of Mr. Rosenthal at trial concerning the value of the property was self-serving, since any substantial recovery would inure to his and Rubin's benefit as holders of the secured claim formerly held by UNB. Actual dam-

ages in the amount of $750.00 will be awarded to the trustee for defendant's violation of the automatic stay.

■ With reference to attorney's fees, the court notes that approximately fifteen (15) court hours were expended during the 2–day trial and approximately two (2) hours were utilized relating to the collateral motions. Experience teaches that 2 hours are utilized in preparation for each one (1) hour in court. Accordingly, we will compensate special counsel for fifty-one (51) legal hours at a rate of $100.00 per hour for a total sum of $5,100.00

■ Punitive damages will not be awarded. There has been no showing that defendant acted in bad faith in violating the automatic stay. To the contrary, defendant was put in the position of having to incur the expense of storing estate property which the former trustee had failed to dispose of because of his woeful inertia. Defendant acted on the erroneous advice of its counsel when it disposed of estate property without obtaining relief from stay or an order directing the trustee to abandon the property.

The trustee will be awarded a total of $5,850.00 in actual damages, which sum includes $5,100.00 in costs and attorney's fees, for defendant's violation of the automatic stay.

## IV

## COUNTERCLAIM

Defendant has brought a counterclaim in which it seeks to recover expenses incurred by it in storing and preserving the inventory and fixtures. A total of $2,630.00 in such expenses were incurred by defendant. According to defendant, these expenses qualify as administrative expenses pursuant to 11 U.S.C. § 503(b)(1)(A) which it should be entitled to setoff against any recovery to which the trustee is entitled.

■ The counterclaim must be denied. The record does not reflect that defendant has filed a proof of claim in which it endeavors to recover these expenses as administrative expenses. Moreover, except for the bare suggestion that it should be entitled to set these expenses off against

any recovery by the trustee, defendant offers no explanation of why setoff is appropriate. 11 U.S.C. § 553(a), which pertains to setoffs, applies by its terms only to mutual debts which arose pre-petition. The debt owed by defendant to debtor did not arise pre-petition but, rather, arose post-petition. Any injury suffered by defendant is at best self-inflicted.

An appropriate Order shall be issued.

### ORDER OF COURT

AND NOW at Pittsburgh this 11th day of March, 1992, in accordance with the foregoing Memorandum Opinion of this same date, it is hereby ORDERED, ADJUDGED and DECREED that judgment is entered in favor of Joseph P. Nigro, Trustee, and against Oxford Development Company in the amount of $5,850.00.