In re Billy P. CRAIN and Charlotte
A. Crain, Debtors.

Billy P. CRAIN and Charlotte
A. Crain, Plaintiffs,

v.

STATE OF MARYLAND, INCOME TAX
DIVISION; United States of America,
Internal Revenue Service; and Gary J.
Gaertner, Trustee, Defendants.

Bankruptcy No. 93–20414–BM.
Adv. No. 93–2242–BM.

United States Bankruptcy Court,
W.D. Pennsylvania.

Sept. 24, 1993.

Earle D. Lees, DuBois, PA, for plaintiffs/debtors.

Gerard J. Mene, Richard I. Miller, Tax Div., U.S. Dept. of Justice, Washington, DC.

Richard E. Bedford, Gary J. Gaertner, Office of Chapter 13 Trustee, Pittsburgh, PA.

Kathleen Robb–Singer, Office of United States Trustee, Pittsburgh, PA.

### MEMORANDUM OPINION

BERNARD MARKOVITZ, Bankruptcy Judge.

Debtors' interim chapter 13 plan of reorganization provides for payment of $12,460.00 to the Internal Revenue Service ("IRS") and for payment of $800.00 to the State of Maryland Income Tax Division for unpaid taxes. Debtors have brought the present adversary action pursuant to 11 U.S.C. § 505(a)(1).[1] They seek a determination that the above sums are the true debts owed to said taxing bodies. According to debtors, IRS is equitably estopped due to the conduct of one of its employees from disallowing debtors' claimed exclusion pursuant to 26 U.S.C. § 121(a) of the capital gain realized from the voluntary sale of their primary residence.

IRS denies that the alleged activity of the agent occurred and, in the alternative, that equitable estoppel would not apply even if it did occur. Judgment will be entered in favor of IRS and State of Maryland Income Tax Division. Debtors will be directed to submit an amended plan of reorganization within ten (10) days of receipt of this Memorandum Opinion and Order which takes into account the amounts set forth in defendants' proofs of claim.

## I

### FACTS

Debtors moved to Maryland in 1984. They purchased a personal residence in Easton, Maryland, in November of 1986.

For reasons that are not of record, debtors owed unpaid income taxes to IRS in the approximate amount of $65,000.00. IRS placed a lien on debtors' residence and had levied against their wages and bank accounts.

Debtors met in February of 1988 with IRS Revenue Officer Brad Miller to discuss ways of resolving their tax problems. They were accompanied to the meeting by their son, John Crain, and by an attorney named Karen Dale.

Debtors made various proposals at the meeting for resolving their tax problems, all of which were rejected by IRS. Miller pointed out that debtors had assets or equity in realty available to pay the debt. Plaintiffs testified that they were informed by agent Miller that IRS would "seize" said assets, sell same at forced sale, and apply the sales proceeds to satisfy debtors' unpaid tax obligations unless debtors promptly placed their house on the market. On March 5, 1988, debtors entered into an exclusive listing agreement with a real estate broker to locate a buyer for their personal residence. A buyer for their residence was located less than three (3) weeks later, wherein a contract of sale was executed for a sales price of $247,000.00. The closing on the sale took place on June 3, 1988. The gross amount tendered by the buyer was $247,071.57.

The amount tendered by the buyer was disposed of as follows: $7,470.00 was paid to Kagan & Associates ("realtor" herein) for settlement costs; $166,220.00 was paid to satisfy the outstanding first mortgage on the property; $65,198.60 was paid to IRS in satisfaction of debtors' unpaid income taxes; $6,680.97 was paid to the State of Maryland for unpaid taxes; and $1,500.00 was paid to Miles & Stockbridge for reasons that are not of record. The sales proceeds were insufficient to pay approximately $12,000.00 in State of Mary-

---

1. 11 U.S.C. § 505(a)(1) provides as follows:
   (a)(1) Except as provided in paragraph (2) of this subsection, the court may determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to

tax, whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction.

land tax as well as the balance due and owing on the realtor's commission.

Approximately 2½ years had elapsed from the time debtors had purchased and moved into their residence in November of 1986 and the closing in June of 1988.

Debtors requested and were granted an extension until October 15, 1989 to file their federal tax return for tax year 1988. According to debtors, "extenuating circumstances" had "prevented the completion of records necessary to prepare the tax returns". No further explanation was given in the request.

On October 12, 1989, debtors filed their federal tax return for tax year 1988. Their gross income was stated as $105,563.00. Of that amount, debtors identified the sum of $52,955.00 as a capital gain realized from the sale of their residence. They did not, however, attempt to exclude pursuant to 26 U.S.C. § 121(a) the capital gain realized from their taxable income. The amount of the tax owed to IRS was declared as $24,701.00 plus $811.00 in penalties.

Debtors subsequently filed an amended tax return for tax year 1988 in which they excluded the capital gain realized from the sale of their residence pursuant to 26 U.S.C. § 121(a). According to debtors, the tax they owed for tax year 1988 was reduced from $24,701.00 to $9,875.00.

The amended return contained the following explanation for the amendment:

Taxpayers are over age 55 and sold their personal residence at a gain. They sold the home under threat of seizure by the Internal Revenue Service because of delinquent taxes. They believed at the time that they were entitled to the one-time exclusion and would not have to pay tax on the gain. They later learned of the requirement that the home must have been used as their main home for 3 out of 5 years. The home was used for 2½ years only. The taxpayers believe that they are entitled to the exclusion because:

1) The intent of the law is to prohibit a taxpayer from taking the exclusion on a nonresidence. The taxpayer clearly used this as their main residence.

2) The home was sold under duress. The sale was similar in nature to an involuntary conversion.

On November 9, 1990, debtor Billy Crain formally requested that an appeals officer examine his 1988 federal tax return. The request stated in pertinent part as follows:

The issues with which I disagree are: the disallowance of the one-time capital gains exclusion on the sale of our principal residence as we are taxpayers over 55 years of age. We disagree with the strict application of the letter of the law in this case instead of the reasonable intent of the law. The *only* reason we did not live in our house the full three years was due to our being forced by the IRS revenue agent to sell our home for back personal income taxes. We did not personally receive any money from the sale of the home and in fact had to pay in addition approximately $12,000.00 for real estate commissions and MD state taxes. We were not informed by the revenue agent or anyone else that the profits received from the sale of the house would result in further income taxes becoming due based upon the capital gain. By rejecting all our attempts to resolve the situation without selling our home, we feel the revenue agent mistreated us and unfairly withheld information from us which would have allowed us to avoid this situation in the first place.

On September 7, 1990, debtors' daughter, utilizing the letterhead of her lawyer husband, sent a letter to debtors' congressman on their behalf requesting his help in resolving debtors' problems with IRS. Attached to the letter was a document signed by both debtors wherein they "attest[ed] to the facts as set forth in the attached letter ...".

The letter stated in pertinent part as follows:

Current difficulty: Neither the IRS nor the attorney hired by my parents to represent them addressed the issue of

taxes on the capital gains at the time of the forced sale of their home (and my parents did not even know to ask about it).

On January 23, 1991, IRS notified debtors that the claimed exclusion of the capital gain had been disallowed because debtors had not resided in the house for at least three years during the five-year period prior to its sale to a third party. Debtors thereafter reached a settlement with IRS wherein they agreed to pay the taxes owed in accordance with a monthly payment schedule.

Debtors brought a civil action against IRS on January 22, 1993 in the United States District Court for the Western District of Pennsylvania at C.A. No. 93–0113. They sought to recover taxes, penalties, and interest paid on the above capital gain. Their action was brought pursuant to 28 U.S.C. § 1346. The district court referred the matter to a magistrate judge.

On February 8, 1993, debtors filed a voluntary chapter 13 petition. Schedule C, Creditors Holding Secured Claims, lists IRS as having a contingent, disputed claim in the amount of $6,460.00. Schedule D, Creditors Holding Unsecured Priority Claims, lists IRS as having a contingent, disputed claim in the amount of $15,864.00. Schedule D also lists State of Maryland, Income Tax Division, as having a contingent, disputed claim in the amount of $15,-801.00.

Also on February 8, 1993, debtors filed a proposed chapter 13 plan of reorganization. Debtors proposed paying the sum of $6,460.00 (plus interest) to IRS on its secured claim, at a monthly rate of $974.00. They also proposed paying the sum of $6,000.00 to IRS at a monthly rate of $859.00, and the sum of $800.00 to State of Maryland, Income Tax Division, at a monthly rate of $115.00 for what debtors had characterized as their unsecured priority tax claims.

On April 21, 1993, the magistrate judge to whom debtors' civil action in the district court had been referred recommended granting IRS's motion to dismiss for lack of jurisdiction because debtors had not fully paid the assessed tax.

IRS filed a proof of claim in debtors' bankruptcy case on May 3, 1993. The claim was in the amount of $41,769.60 for unpaid tax, interest, and penalties for tax year 1988.

State of Maryland, Income Tax Division, also filed a proof of claim on May 3, 1993. Its claim was in the amount of $14,429.43 for unpaid taxes, interest, and penalties for tax years 1986 through 1988.

Also on May 3, 1993, debtors brought the present adversary action against IRS seeking a determination pursuant to 11 U.S.C. § 505 of the amount of its tax liability to defendants.

Debtors maintain that IRS is equitably estopped from disallowing their claimed exclusion pursuant to 26 U.S.C. § 121 of the above capital gain. According to debtors, agent Miller misrepresented that debtors would qualify for the exclusion if they sold their residence themselves. Debtors allege that agent Miller indicated that the capital gain tax could be waived but failed to inform them that they had to live in the residence for at least three years in order to qualify. Debtors seek a determination that the amount of tax owed to IRS is $12,466.00 or less and ask that the balance of IRS's proof of claim be disallowed. The basis of debtors' cause of action against State of Maryland, Income Tax Division, is not clear.

On May 24, 1993, the district court accepted the recommendation by the magistrate judge and entered summary judgment against debtors at C.A. No. 93–0113.

On June 3, 1993, IRS filed a motion to dismiss the present adversary action against it for failure to state a claim upon which relief can be granted.

It was agreed by the parties that this case could proceed directly to trial, which was conducted on September 1, 1993. All parties were given an opportunity to present any evidence they deemed appropriate.

## II

## ANALYSIS

### A) *Internal Revenue Service*

As has been noted, debtors' claimed exclusion of the capital gain realized from the sale of their primary residence pursuant to 26 U.S.C. § 121(a) [2] was disallowed because they had not owned and used the property as their primary residence for at least three years during the five-year period ending when the property was transferred on June 3, 1986. Debtors argue that IRS should be equitably estopped from disallowing the exclusion because of the misconduct of one of is employees. They allege that revenue officer Brad Miller falsely informed them at a meeting in February of 1988 that they should sell the residence themselves because, by so doing, they would qualify for the exclusion under § 121(a). Miller, they maintain, neither informed them of the three-year ownership-use requirement nor offered to allow debtors to postpone sale of their residence until the three-year period had run.

### 1. *Elements Of Equitable Estoppel.*

■ Equitable estoppel is applied to avoid injustice in certain cases. See *Heckler v. Community Health Services of Crawford County, Inc.*, 467 U.S. 51, 59, 104 S.Ct. 2218, 2223, 81 L.Ed.2d 42 (1984). It is triggered by the conduct of a party that is inconsistent with a position later adopted by it and which is prejudicial to the rights of another who relied on such conduct to their detriment. See *In re M.J. Shoearama, Inc.*, 137 B.R. 182, 189 (Bankr. W.D.Pa.1992).

■ A party must prove the following in order to prevail on a traditional equitable estoppel claim:

(1) a material misrepresentation;

**2.** 26 U.S.C. § 121 provides in relevant part as follows:

(a) **General rule.**—At the election of the taxpayer, gross income does not include gain from the sale or exchange of property if—
(1) the taxpayer has attained the age of 55 before the date of such sale or exchange; and

(2) reasonable reliance upon that misrepresentation; and

(3) damage resulting from the misrepresentation.

See *Gridley v. Cleveland Pneumatic Co.*, 924 F.2d 1310, 1319 (3d Cir.1992) (*citing Pane v. RCA Corp.*, 868 F.2d 631, 638 (3d Cir.1989)).

■ A party asserting equitable estoppel against the government must prove more than is required when it is asserted against a private entity. "The Government may not be estopped on the same terms as any other litigant". *Heckler*, 467 U.S. at 60, 104 S.Ct. at 2224. A fourth element must be established when a party asserts equitable estoppel against the Government:

(4) affirmative misconduct on the part of the Government.

See *U.S. v. Asmar*, 827 F.2d 907, 912 (3d Cir.1987).

■ The burden of proof is upon the party asserting equitable estoppel. See *Heckler*, 467 U.S. at 61, 104 S.Ct. at 2224.

### (i) *Material Misrepresentation.*

■ Debtors' testimony that revenue officer Miller represented to debtors that they could exclude from their gross income any capital gain realized if they sold their residence themselves is belied by other evidence having considerable weight. The allegation that Miller had so represented did not surface until debtors brought suit against IRS in district court on January 23, 1993 and is refuted by several earlier statements and declarations they made.

Debtors' initial federal tax return for tax year 1988, which covered the sale of their residence, does not exclude from their gross income the capital gain so realized. This suggests that debtors were not aware of the exclusion when they filed their initial tax return. Had agent Miller so represent-

(2) during the 5–year period ending on the date of the sale or exchange, such property has been owned and used by the taxpayer as his principal residence for periods aggregating 3 years or more.

ed, one would expect debtors to have claimed the exclusion in their initial return. The reasons offered for non-action are not credible.

The explanation provided when debtors filed their amended 1988 tax return, in which they claimed the capital gain exclusion for the first time, reinforces the conclusion that Miller made no such representation. The reasons given by debtors for why they were entitled to the exclusion makes no reference to any misrepresentation by an IRS employee.

The request in November of 1990 by Billy Crain for consideration of the matter by an appeals officer indicates that Miller did not discuss the matter with them at all. The requests state that "[w]e were not informed by the revenue agent or anyone else that the profits received from the sale of the house would result in further income taxes becoming due based on the capital gain".

The letter dated September 7, 1990 written to debtors' congressman, the truth of which was attested to by debtors, gives the same indication as the request for consideration by an appeals officer. It asserts that "[n]either the IRS nor the attorney hired by my parents to represent them addressed the issue of taxes on the capital gains at the time of the forced sale of their home (and my parents did not even know to ask about it)".

The above evidence overwhelmingly establishes that no employee of IRS misrepresented to debtors that they could take advantage of § 121(a) if they sold their primary residence and used the profit derived therefrom to pay their unpaid tax obligations to IRS for prior years.

#### (ii) *Reasonable Reliance.*

The second of the above elements required for equitable estoppel also is not present in this case. Even assuming that an employee of IRS made such a representation, debtors did not rely on it. Moreover, if they did rely, it was not reasonable for them to do so.

The evidence presented at trial indicates that debtors did not rely on any such representation by an IRS employee. As has been noted, debtors did not claim the exclusion on their initial 1988 tax return. Had revenue officer Miller made such a representation, it could be expected that debtors' initial 1988 tax return would have claimed the capital gain exclusion. Moreover, the letter to debtors' congressman and the request for consideration by an appeals officer indicate that debtors were not even aware when they sold their residence that any capital gain so realized might be excluded from their gross income.

Even if they did rely on which a representation, it was not reasonable for them to do so.

■ In order for their reliance to be reasonable, the party asserting equitable estoppel must establish that they neither knew nor should have known at the time of reliance that Government's conduct was misleading. *Heckler*, 467 U.S. at 63, 104 S.Ct. at 2225.

Debtors' lame explanation that they relied upon agent Miller's representation because "they were respectful of people in positions of authority" rings hollow. Both debtors are sophisticated and unquestionably knew better than to take any such statements by agent Miller at face value. Moreover, an attorney accompanied debtors to the meeting at which the representation purportedly was made. Debtors recognized that they were in a potentially adversarial position with respect to IRS and therefore were in need of legal representation to protect themselves.

#### (iii) *Detrimental Reliance.*

■ Detrimental reliance requires, at the very least, that a party has changed its position "for the worse" as a consequence of the Government's purported misconduct. See *Heckler*, 467 U.S. at 61, 104 S.Ct. at 2224.

Even if it be assumed (for the sake of argument) that IRS did engage in the "misconduct" of which debtors complain and that debtors reasonably relied on that "mis-

conduct", it cannot be concluded that debtors changed their position for the worse as a consequence. Debtors' lot was no worse than it would have been had they not changed their position in reasonable reliance upon the Government's misrepresentation.

Two options were available to debtors. They could have sold the residence on their own (as they did) or they could have done nothing and waited for IRS to foreclose and to proceed to a forced sale of the residence.

As has been noted, debtors' exclusion of the capital gain realized from the voluntary sale by them of their residence was disallowed because debtors had failed to satisfy the three-year requirement set forth at 26 U.S.C. § 121(a)(2). Debtors have not shown that the outcome would have been more favorable to them had they done nothing and waited for IRS to foreclose on their property.

Debtors would not have been permitted to exclude any capital gain so realized (assuming there have been any from a forced sale). There is nothing in the language of § 121 (or anywhere else) which indicates that the three-year requirement need not be met in a forced sale.

### (iv) *Affirmative Misconduct.*

■ "Affirmative misconduct" has never been clearly defined by any court. This much, however, is clear. The misconduct complained of must be "affirmative", which indicates that something more than mere negligence is required. See *Kennedy v. U.S.*, 965 F.2d 413, 421 (7th Cir.1992).

Debtors have not shown that any employee of IRS was negligent with respect to them.

### B) *State Of Maryland, Income Tax Division*

Debtors also seek a determination that their tax liability to State of Maryland, Income Tax Division, is $800.00 rather than $14,429.93, as is indicated in the latter's proof of claim.

No evidence was offered at trial concerning the amount of debtors' tax liability to this defendant.

Judgment will be entered against debtors and in favor of defendants. Debtors will be directed to submit within ten (10) days an amended chapter 13 plan which takes into account the determinations made in this Memorandum Opinion.

An appropriate order shall be issued.

### ORDER OF COURT

AND NOW at Pittsburgh this 24th day of September, 1993, in accordance with the accompanying Memorandum Opinion, it hereby is **ORDERED, ADJUDGED** and **DECREED** that the amount of debtors' tax liability to the Internal Revenue Service, as stated in its proof of claim in the amount of $41,769.60, shall not be reduced through the doctrine of equitable estoppel to $12,460.00.

IT IS FURTHER **ORDERED, ADJUDGED** and **DECREED** that the amount of debtors' tax liability to State of Maryland, Income Tax Division, is $14,429.43, as stated in its proof of claim.

Debtors are directed to file an amended chapter 13 plan of reorganization within ten (10) days from receipt of this Memorandum and Order; said plan is to take into account the above tax liability determinations.

IT IS SO **ORDERED.**