In re Everett F. BROWN, Debtor.

Everett F. BROWN

v.

Mike FOLEY, George G. Seelig, Defendants.

Bankruptcy No. 96–40208(3)7.

United States Bankruptcy Court, W.D. Kentucky.

Sept. 26, 1997.

318

Russ Wilkey, Owensboro, Ky, for plaintiff/debtor.

Douglas Robertson, Bowling Green, KY, for defendant.

## MEMORANDUM

DAVID T. STOSBERG, Bankruptcy Judge.

This adversary proceeding came before the Court for trial on August 12, 1997. The parties appeared with counsel: Russ Wilkey, for Plaintiff, Everett F. Brown (hereinafter "Brown") and David Lamar, for Defendant, Mike Foley (hereinafter "Foley"). The Court has carefully considered the pleadings, memoranda, arguments of counsel, the exhibits and the testimony of the parties and witnesses and reviewed applicable authorities, including 11 U.S.C. § 362, 11 U.S.C. § 524, and the cases cited by counsel.

### Findings of Fact

Foley and Brown began doing business in 1992. The testimony of both parties established a regular business routine. Foley, or one of Foley's employees, placed inventory on the shelves of Brown's store, F & C Truck Parts. Foley inspected the shelves weekly, replaced any inventory sold by Brown, and invoiced Brown for the inventory sold.

On June 30, 1995, Brown closed his business due to financial problems. Brown had purchased the business from Mr. Miller, who financed the acquisition. When Brown closed the business, he turned over all of the inventory to Mr. Miller. On the date he closed the business, Brown owed Foley $2,116.61 on two outstanding invoices. (See Exhibit 7, statement dated January 23, 1996).

On February 23, 1996, Brown filed bankruptcy and listed Foley's business, Southern Kentucky Rebuilders, Inc., as a creditor. Foley acknowledged receipt of notice of the bankruptcy, but did not attend the § 341 meeting on April 3, 1996, or file an adversary proceeding pursuant to 11 U.S.C. § 523 or 11 U.S.C. § 727. On June 6, 1996, Brown received his discharge.

Well after receiving notice of Brown's bankruptcy, Foley filed a criminal complaint against Brown and testified before the grand jury of the Ohio Circuit Court. On May 24, 1996, the grand jury indicted Brown for theft by failure to make required disposition, a felony. (See Exhibit 2). On June 20, 1996, the Sheriff arrested Brown and took him to

jail. Brown was released upon posting a $500.00 bond.

Brown retained Dale Bartlett ("Bartlett") to represent him in the criminal action and paid Bartlett $500.00. Bartlett testified that he contacted Mr. George Seelig ("Seelig"), the Commonwealth Attorney assigned to Brown's criminal case, to inquire about Foley's intent in filing the criminal complaint against Brown. Seelig contacted Foley and, subsequently, wrote a letter to Foley, stating that he understood that Foley wished to secure $2,100 from Brown and would have no objection to a "one year deferral" on Brown. (See Exhibit 4, letter dated July 2, 1996). Seelig asked Foley to sign the letter and return it to Seelig if it accurately reflected Foley wishes. Foley signed and returned the letter to Seelig. (See Exhibit 4).

On January 2, 1997, Brown filed this adversary proceeding against Seelig and Foley, seeking an injunction against any further criminal proceedings and damages for violation of the discharge injunction and the automatic stay. This Court immediately enjoined Foley and Seelig from pursuing the criminal proceedings and reserved ruling on the issue of damages. *See, Howard v. Allard,* 122 B.R. 696, 699 (W.D.Ky.1991) (bankruptcy courts should enjoin criminal proceedings when facts reveal they were initiated for the purpose of collecting debts which either have been discharged or might be discharged in bankruptcy).

After receiving the injunction, Seelig agreed to dismiss the criminal proceedings against Brown, with prejudice. In exchange, Brown dismissed Seelig as a defendant in this adversary proceeding by Agreed Order.

Initially, Foley failed to respond to Brown's complaint. On March 3, 1997, when Brown moved for summary judgment, Foley finally responded.

### Conclusions of Law

Foley's untimely answer asserted two defenses. First, Foley claims that all actions taken by him were in his capacity as agent for his corporation, Southern Kentucky Rebuilders, Inc. The Court views this defense with some skepticism. The letter and documents executed by Foley do not indicate a representative capacity and all documents relative to the criminal proceeding were signed by Foley, individually. (See Exhibit 4, letter dated July 2, 1996). The indictment reads as follows:

> ... the above-named defendant [Brown] committed the offense of theft by failure to make required disposition of property when he received starters and alternators belonging to **Mike Foley** on consignment, which the defendant then treated as his own and sold, and failed to pay **Mike Foley** for his goods, contrary to the known legal obligation to pay **Mike Foley** or return the properties to him, and by which Frank Brown intentionally dealt with the starters and alternators as his own property and failed to make required payment or disposition thereof, said items had a value of $2,100. (emphasis added).

There is no reference in the indictment to Foley's corporation. Moreover, Foley is apparently the sole shareholder of the corporation, and is *de facto* the alter ego of the corporation. The Court will not excuse Foley's conduct by allowing him to belatedly hide behind a rather thin corporate veil.

Secondly, Foley argued at trial that the goods sold by Brown were held on "consignment." Although Foley claimed that the property was *consigned,* he offered no proof of any consignment arrangement except some handwritten notations added to a typewritten invoice. (See Defendant's Exhibit 1). Foley first raised the consignment issue the day of trial, having never addressed this issue in any pleading. The sale of goods as described by both Foley and Brown does not exhibit any of the characteristics of a consignment. *See,* Ky.Rev.Stat. Ann. § 355.2–326. Brown testified that there was no sign or other notice to third parties that any of the inventory in Brown's store belonged to Foley. The testimony describing the business practices between the parties directly contravened Foley's characterization that the goods were sold on consignment. Under Kentucky Revised Statute § 355.2–401, Brown took title when Foley physically delivered the goods. Simply enough, there was no consignment.

Foley admitted he learned about the business closing within 30 days, yet he did *nothing* to try to recover the allegedly "consigned" property for six (6) months. Foley recalled sending a note to Brown about "taking other action," but had only vague recollections· of his meeting with his attorney, Doug Robertson, in February of 1996. Foley said that he doubted if he even showed the bankruptcy papers to Robertson. Foley testified that he "got ripped off" and opted to go to the Commonwealth Attorney of Ohio County. Foley provided the information to the grand jury about the criminal case. This court can only surmise that, when testifying before the grand jury, Foley took liberty with the truth by embellishing or fabricating the facts. Otherwise, it is unlikely that the indictment would have named Mike Foley as the person harmed when the invoices (*See* Exhibit 7) show a corporation as the creditor.

Had Foley bothered to investigate the closing of the business, he would have easily ascertained that Brown surrendered all of the business property to Mr. Miller, the former owner. Just as the sheriff had no difficulty locating Brown to make an arrest, Foley could have easily tracked down Brown to learn the facts. Even if Foley could not have located Brown prior to the filing of the bankruptcy petition, Foley could have attended the meeting of creditors on April 3, 1996 and *asked* Brown what happened to the property.

Brown did not hide the property, abscond with the funds or do anything else indicating an intent to defraud any of his creditors. This court understands why the circuit judge, according to Bartlett, expressed a dim view of how the indictment was obtained when he ultimately dismissed the criminal action upon learning of the real facts.

The dismissal of the criminal action, however, could not undo the embarrassment that Brown suffered after being arrested at his mother-in-law's house. We note that Brown resided in ·a smaller community where undoubtedly "everybody" heard about Frank Brown's arrest. Brown, in his late fifties, posed such a "threat" that the sheriff did not even bother to handcuff him. The circuit court released Brown on a $500.00 bond one-half hour from the time he arrived at the jail.

Prior to this incident, Mr. Brown had never been arrested.

Exhibits 3 through 7, and especially Exhibit 4, demonstrate Foley's true motive for seeking the indictment—he wanted money and signed a letter agreeing to accept $2,100.00 to defer the criminal action. Before the settlement occurred, however, Dale Bartlett contacted Russ Wilkey, who initiated this adversary proceeding to enjoin Foley and the Commonwealth Attorney. The Commonwealth Attorney quickly agreed to drop the charges. Foley, on the other hand, initially ignored this adversary proceeding just as he ignored the automatic stay. Ultimately, Foley responded to a motion for summary judgment and filed a trial brief reflecting a rather unrepentant attitude. At trial, Foley, ironically, acted as if he were some sort of victim and exhibited no regret, whatsoever, for the actions he took against Brown. Foley simply does not "get it" or, to put it more poignantly, refuses to get. it; that is, creditors in bankruptcy often lose money. Rather than recognize the stay and accept the loss, Foley elected to pursue an indictment designed to humiliate and embarrass Brown into paying the money. The court cannot imagine Brown's shock upon being arrested shortly after receiving his discharge.

The discharge is the essence of the bankruptcy proceeding. It provides the fresh start truly cherished by all debtors. It provides financial relief along with the removal of the constant stress created by dealing with past due debts. The combination of the automatic stay and the discharge injunction relieve debtors of financial pressures and allow debtors to start anew.

In the milieu of bankruptcy court, creditors almost always respect the mandate imposed by the § 362 stay and § 524(a) discharge injunction. 11 U.S.C. § 524(a)(2), provides that a discharge...

> operates as an injunctive against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt...

Once in awhile, creditors do not· receive notice and take action to collect their debts. Courts generally do not consider such an

action a violation, especially when creditors cease action upon receiving notice of the bankruptcy. Only on extremely rare occasions do courts impose sanctions for violation of the stay or the discharge injunction.

 Creditors such as Foley, who flagrantly disregard bankruptcy laws, must suffer the consequences in the form of sanctions. This court sanctions Foley for two reasons:

1. to compensate Brown for the damages suffered; and
2. to deter other creditors from engaging in similar conduct that impedes a debtor's fresh start.

The Court finds the evidence of Brown's damages to be uncontroverted and, pursuant to *Archer v. Macomb County Bank*, 853 F.2d 497, 499 (6th Cir.1988), awards as compensatory damages:

1. Lost wages of $280;
2. Bartlett's attorney fees of $500;
3. Non-refundable Bond Fee of $50; and
4. Wilkey's attorney fees in the sum of $2,663.75.

(*See* Affidavit # 26).

As a deterrent, we award Brown punitive damages in the sum of $6,300.00, which is triple the amount which Foley sought to recover from Brown through the criminal proceeding. *See generally, In re M.J. Shoearama, Inc.*, 137 B.R. 182 (Bankr. W.D.Pa.1992).

The Court takes no delight in awarding punitive damages; however, we reiterate that no creditor can be permitted to flagrantly disregard the § 524 injunction and the § 362 stay. If the Court were to tolerate such conduct, then the rule of law would be undermined and ultimately emasculated, thereby depriving all debtors of the right to a fresh start that results from the discharge.

A Judgment accompanying these findings will be entered forthwith.

## JUDGMENT

Pursuant to the Court's Memorandum entered this same date and incorporated herein by reference, and the Court being otherwise sufficiently advised,

IT IS ORDERED that Everett F. Brown recover from Mike Foley the sum of $9,793.75, plus interest from the date of this Judgment at the current federal judgment rate of 5.60%.