### In re OKAN'S FOODS, INC., Debtor.

### OKAN'S FOODS, INC., Plaintiff,

### v.

### WINDSOR ASSOCIATES LIMITED PARTNERSHIP, Edward S. Brown, Brean Corp., and Oakwood Corporate Housing, Inc., Defendants.

### OKAN'S FOODS, INC., Plaintiff,

### v.

### R & B DEVELOPMENT CO., d/b/a R & B Apartment Mgt. Co., d/b/a R & B Realty Group, d/b/a Oakwood Corporate Housing, Inc., d/b/a Oakwood Mgt. Co., Defendants.

Bankruptcy No. 95–10044SR.
Adversary Nos. 97–029, 97–687.

United States Bankruptcy Court,
E.D. Pennsylvania.

March 6, 1998.

---

Maurice Mitts, Middleman & Mantour, P.C., Philadelphia, PA, for Plaintiff.

Timothy A. Gallogly, Philadelphia, PA, for Defendants.

Frederic J. Baker, Philadelphia, PA, U.S. Trustee.

## OPINION

STEPHEN RASLAVICH, Bankruptcy Judge.

### Introduction:

Before the Court is a motion for partial summary judgment filed by debtor/plaintiff Okan's Foods, Inc., d/b/a the Peacock on the Parkway (the "Debtor"). By means of the instant motion the Debtor seeks judgment in its favor on Count I of the Complaint which underlies adversary proceeding 97–029. Also before the Court is a cross motion for summary judgment filed by the defendants in the foregoing adversary proceeding—Windsor Associates Limited Partnership ("Windsor, LP"), Edward S. Brown ("Brown"), Brean Corp. ("Brean"), and Oakwood Corporate Housing, Inc. ("Oakwood")(collectively the "Defendants")—who request judgment in their favor on Count I. The Court held a hearing on the motions on December 8, 1997, after the conclusion of which, both matters were taken under advisement. The motions were submitted for final decision on January 5, 1998, after the Court received post hearing memoranda of law from the parties. For the reasons which are more fully stated below, the Debtor's motion is denied and the Defendants' cross motion is granted. Summary judgment, therefore, will be entered in favor of the Defendants and against the Debtor on Count I of the Complaint.

## JURISDICTIONAL STATEMENT

The Court has jurisdiction over the parties and subject matter of the instant core proceeding pursuant to 28 U.S.C. § 1334; 28 U.S.C. § 157(a), § 157(b)(1) and § 157(b)(2)(A) and (O).

## BACKGROUND

The Debtor is the owner of a restaurant known as the Peacock on the Parkway, located on the first floor and mezzanine level of the Oakwood Apartments at The Windsor (the "Windsor"), 1700 Benjamin Franklin Parkway, Philadelphia Pennsylvania. Windsor, LP is the record owner of the Windsor real estate. On or about November 22, 1993 the Debtor and Windsor, LP entered into a Retail Lease (the "Lease") for the commercial space at the Windsor which the Debtor's restaurant occupies (the "Premises").[1] The Debtor was represented by legal counsel in the foregoing transaction.

The Premises was formerly occupied by Continental Bank and was not outfitted for use as a restaurant at the time that the Lease was signed. While it is not disputed that the Debtor performed work on the Premises to convert it from its former use as a bank and to make it ready for use as a restaurant, the amount of the Debtor's expenditures for such work is contested by Windsor. The actual amount of the Debtor's expenditures, however, is not material to the matters presently before the Court.

The Debtor's restaurant opened for business in August, 1994. Although the restaurant's success prior to the filing date of the Debtor's bankruptcy petition constitutes a matter of dispute between the parties, see Amended Answer to Complaint, ¶¶ 14 and 16; Defendants' Response and Cross Motion, ¶¶ 6 and 7, it is not disputed that as of the petition date the Debtor was two months behind on its rent payments under the Lease, and four months behind on its obligation to pay both use and occupancy taxes and certain utilities bills. See Defendants' Response and Cross Motion, Exhibits 4 and 11, at ¶ 7. As will be discussed *infra*, the relative success or failure of the Debtor's business prepetition, as well as the actual amount of the Debtor's prepetition payment arrears under the Lease, are not material to the matters *sub judice*.

Of particular relevance to the instant matters are the uncontested material facts which follow. By letter dated December 20, 1994, Windsor notified the Debtor that it was in default under the Lease for failing to pay both rent for November and December 1994 ($8,075.84 ), and use and occupancy taxes from July 1994 through December 1994 ($701.40). The letter also informed the Debtor that Windsor, LP intended to pursue legal remedies against the Debtor, including confession of judgment and execution, if payment in full of the foregoing overdue amounts was not made within three days of the date of the letter. See Defendants' Response and Cross Motion, Exhibit 15. On December 27, 1994, Windsor, LP confessed judgment against the Debtor for: 1) the liquidated amount of $198,261.87; and 2) possession of the Premises. The money judgment Windsor, LP confessed against the Debtor consisted of: $8,075.84 for outstanding rent for November and December 1994, and unpaid use and occupancy taxes for the period July through December 1994; $403.79 for attorneys' commission; and $189,782.24 for accelerated rent due under the Lease for the period January, 1995 through November 30, 1998. See Debtor's Motion for Partial Summary Judgment, Exhibit 1–B. The Defendants admit that Brown signed the affidavits that supported entry of the foregoing judgments by confession.[2] See Amended Answer, ¶ 16.

---

1. The Lease was amended by an addendum dated November 22, 1993, and by a letter dated August 10, 1994. See Debtor's Motion for Partial Summary Judgment, Exhibit 1–A; Defendants' Response and Cross Motion for Summary Judgment ("Defendants' Response and Cross Motion"), Exhibit 5.

2. Whether Brown is the general partner of Windsor, LP, as the Debtor averred in ¶¶ 3 and 16 of the Complaint, or rather, that Brown is the managing partner of Windsor, LP's general partner, Brown Windsor Associates, as the Defendants asserted in their Amended Answer at ¶ 3, is not material to the resolution of the motions presently before the Court.

Also on December 27, 1994, Windsor, LP caused to be issued and delivered to the Philadelphia County Sheriff: 1) a writ of execution to levy on the Debtor's personal property at the leased premises and to attach, *inter alia,* all of the Debtor's bank accounts at CoreStates Bank; and 2) a writ of possession authorizing the Sheriff to seize possession of the leased Premises. On December 29, 1994, the Sheriff served the writ of execution on CoreStates Bank. Thereafter, on January 3, 1995, CoreStates Bank notified the Debtor that it had been served with a writ of execution and interrogatories in aid of attachment, and that the Bank had placed a total restraint on the Debtor's checking accounts—account numbers 00200–07823, 00200–34646 and 00200–34654. The Bank also informed the Debtor that as a result of the execution it had withdrawn $1,064.06 from the Debtor's account and applied those funds against the Debtor's outstanding loan balance with the Bank. On December 30, 1994, the Sheriff served the writ of execution upon the Debtor and levied upon certain contents of the leased Premises. *See* Debtor's Motion for Partial Summary Judgment, Exhibit 1–G. The writ of possession was also served on the Debtor on December 30, 1994. *See id.,* at Exhibit 2, pp. 68–71 and attachments 4, 4A and 6A. Apart from the contents of its letter to the Debtor dated December 20, 1994 (notice of default

under the Lease and of Windsor, LP's intent to pursue legal remedies, including confession of judgment and execution), Windsor, LP did not provide the Debtor with notice prior to the issuance of any of the foregoing execution. Windsor, LP posits, however, that the Debtor waived such notice pursuant to the terms of paragraph fourteen of the Lease.[3]

The Debtor filed a petition for relief under Chapter 11 of the United States Bankruptcy Code (the "Code"), 11 U.S.C. §§ 101–1330, on January 4, 1995. The automatic stay imposed by Code § 362(a) upon the filing of the petition prevented Windsor, LP from completing execution on its judgments. *See, e.g.,* 42 Pa.R.Civ.P. 2958 (rescinded April 1, 1996, effective July 1996); *Jordan v. Fox, Rothschild, O'Brien & Frankel,* 20 F.3d 1250, 1263 (3d Cir.1994) (absent a discretionary stay of execution, a plaintiff executing on a judgment may seize property that has been attached twenty days after the date the prothonotary originally mailed notice of entry of the confessed judgment to the judgment debtor). Five days later (on January 9, 1995), the ink on the petition barely dry, Windsor, LP, filed a motion captioned "Motion to Compel Surrender of the Premises, Rejection of the Lease and for Relief from Stay." A hearing on the motion was held on February 9, 1995, whereupon it was reported to the Court on the record that the Debtor

---

3. Paragraph fourteen of the Lease (captioned *Default*) states, in pertinent part:

(h) In the event of any default occurrence by which Landlord shall have the rights and remedies specified in this Section 14:

(i) Tenant hereby authorized [sic] and empowers any prothonotary or attorney of any court of record to appear for Tenant and to confess judgment against Tenant (whether by Complaint to Confess Judgment or otherwise) in favor of Landlord and for any amount due to Landlord hereunder (including and without limitation the Accelerated Rent Component), together with interest and costs and an attorney's commission of five percent (5%) of the amount due;

(ii) For the purposes of obtaining possession of the Demised Premises, Tenant hereby authorizes and empowers and [sic] prothonotary or attorney of any court of record to appear for Tenant and to file in any court an agreement for entering an amicable action and judgment in ejectment for recovery of possession, and/or to confess judgment for possession against

Tenant and those claiming by, through or under Tenant in favor of Landlord by Complaint to Confess judgment [sic] or otherwise, and Tenant agrees that upon such entry or judgment a writ of possession for the Demised Premises may forthwith issue; and

(iii) The authority herein granted to confess judgment for money or possession shall not be exhausted by one exercise thereof, but judgment may be confessed as aforesaid from time to time as often as there shall be default or breach by Tenant hereunder, and such power may be exercised after the expiration of the term hereof as well as during the original term and any extensions or renewals thereof.

(i) Tenant hereby waives all errors and defects of a procedural nature in any proceedings brought against it by Landlord under the Lease. Tenant further waives the right to any notices to quit as may be specified in the Landlord and Tenant Act of Pennsylvania as amended, and agrees that five (5) days notice shall be sufficient in any case where a longer period may be statutorily specified.

consented to the entry of an order granting relief from stay, but that issues with respect to rejection of the lease had not been discussed by the parties. *See* Transcript of hearing of February 9, 1995, at p. 2. The form of order attached to Windsor, LP's motion was signed by the Court after striking out certain provisions therein pertaining to rejection of the Lease and vacation of the Premises by the Debtor. The Order, dated February 9, 1995, stated, *inter alia,* that: "it is hereby ORDERED and DECREED that the stay is modified and that [Windsor] may proceed with all available state court remedies to regain possession of the premises."

Later that day, Windsor, LP and the Debtor reached an agreement which provided, *inter alia,* that Windsor would forbear from exercising its state court remedy of eviction against the Debtor, conditioned on the Debtor timely making certain payments to Windsor. The agreement further provided that in the event the Debtor failed to make any of the prescribed payments on the dates specified, Windsor would be permitted to immediately, and without further notice, evict the Debtor from the Premises. The foregoing agreement was memorialized in a letter dated February 10, 1995, *see* Defendants' Response and Cross Motion, Exhibit 11, which was signed by counsel for Windsor, LP and countersigned by counsel for the Debtor.

On May 3, 1995, Windsor, LP caused the writ of possession for the Premises to be reissued by the Prothonotary. The next day, on May 4, 1995, Windsor, LP filed a Motion to Compel Surrender of Premises, Rejection of the Lease, and for Relief from Stay in which it alleged, *inter alia,* that the Debtor failed to move to assume the Lease within sixty days of the filing date of the bankruptcy petition, and that the Debtor defaulted, postpetition, under various terms of the Lease. In its response to the Motion, filed on May 22, 1995, the Debtor argued that the Lease was no longer subject to automatic rejection since it had been implicitly assumed by virtue of the February 10, 1995 agreement, and that Windsor, LP was precluded from moving for automatic rejection of the Lease by virtue of its acceptance of rent and other payments under such agreement. The Debtor also denied Windsor's allegations of material defaults under the Lease. The hearing date on Windsor's Motion was set for June 1, 1995. *See* Docket Report, Case No. 95–10044. However, on May 23, 1995, the Sheriff enforced the recently reissued writ of possession by evicting the Debtor from the Premises. By reason of the eviction the Debtor's business was closed on May 23, 1995.

The foregoing eviction and closing of the Debtor's business, however, proved to be only short lived. On May 25, 1995, the Debtor filed a Motion to Stay Windsor from Evicting the Debtor and to Abide by the Agreement between the parties dated February 10, 1995. The Debtor's request for expedited consideration was granted and a hearing on the motion was held the next day before Chief Bankruptcy Judge Scholl, sitting as emergency judge in my absence on that day. At the conclusion of that hearing, Judge Scholl Ordered that the Debtor be restored to possession of the Premises pending a final hearing on the motion to be held on my return on June 1, 1995 (the original return date of Windsor's motion), and conditioned on the Debtor making certain payments to Windsor, including an immediate payment of $2,000.

The June 1, 1995 hearings on both the Debtor's and Windsor, LP's motions were continued until June 8, 1995. By Order dated June, 8, 1995, I denied Windsor's motion, and granted, in part, the Debtor's motion. As pertains to the relief granted to the Debtor, the Court ruled that the Order of February 9, 1995 (granting Windsor's request for modification of the automatic stay) continued in full force and effect, and that the parties were to abide by the terms of their February 10, 1995 letter agreement. In addition, the Court directed the Debtor to file a motion to assume the Lease within seven days of the date of the Order, or, barring the filing of such motion, the Lease would be deemed rejected by operation of law.

The Debtor timely filed a motion to assume the Lease as directed in the June 8, 1995 Order. Although the motion was initially opposed by Windsor, LP, the parties stipulated and agreed on the record at a hearing

held on September 7, 1995, that, conditioned on the Debtor timely making certain payments, Windsor's objection to the Debtor's assumption of the Lease would be withdrawn and the Lease would be assumed. The stipulation also provided that in the event the Debtor failed to make any of the specified payments on time: a) the Lease would be deemed rejected; b) the Debtor would immediately vacate the Premises; c) Windsor would be permitted to immediately proceed with all available state court remedies to gain possession of the Premises; and d) the Debtor's Chapter 11 case would be converted to a proceeding under Chapter 7. Thereafter, in January 1996, the Debtor requested Windsor, LP's agreement to the payment of certain prepetition arrears owed to Windsor on terms different than those previously agreed to in the February 10, 1995 forbearance agreement. *See* Defendants' Response and Cross Motion, Exhibit 4. Windsor, LP agreed to the Debtor's request.

On January 19, 1996 the Debtor filed a proposed Chapter 11 plan of reorganization and a disclosure statement pertaining to such plan. The disclosure statement was approved on March 7, 1996. No provision in either the plan or the disclosure statement makes reference to any specific claims or causes of action the Debtor might possess against Windsor, LP. By Order dated September 12, 1996, the Debtor's proposed Chapter 11 plan of reorganization was approved.[4]

On January 15, 1997 the Debtor commenced adversary proceeding 97–029 by filing a Complaint against the Defendants—Windsor, Brown, Brean and Oakwood. The cover sheet to the Complaint indicated a demand for judgment in the approximate amount of $1,000,000. The Debtor asserts four causes of action in the Complaint: I) Violation of 42 U.S.C. § 1983; II) Violation of 11 U.S.C. § 362(a); III) Tortious Interference; and IV) Conversion of Security Deposit. By stipulation and agreement of the parties approved by the Court on April 17, 1997, Counts II and IV of the Complaint were voluntarily dismissed with prejudice. Thereafter, on May 27, 1997, the Court approved a stipulation and agreement submitted by the parties voluntarily dismissing Oakwood from the case with prejudice.

Subsequently, on May 30, 1997, the Debtor filed adversary proceeding 97–687 naming as the only defendant therein R & B, allegedly doing business under a number of fictitious names (one such d/b/a was Oakwood). The complaint commencing this adversary proceeding asserts two causes of action: I) Tortious Interference; and II) Permanent Injunction. By Order dated August 28, 1997, the Court granted a motion filed by the Debtor requesting consolidation of adversary proceedings 97–029 and 97–687 for purposes of trial. Thereafter, on September 30, 1997, the Court approved a stipulation agreed to by the parties voluntarily dismissing R & B from the case with prejudice. Since the only defendant in the case, R & B, was voluntarily dismissed from the proceeding with prejudice, no issues remain for the Court to decide. The proceeding, therefore, is effectively over, notwithstanding its continued presence on the Court's active case list. In light of the foregoing, and the Debtor's failure to formally withdraw this action, adversary proceeding 97–687 is hereby dismissed by the Court *sua sponte*.

Remaining before the Court, therefore, are only Counts I and III of adversary proceeding 97–029, asserted against defendants Windsor, Brown and Brean. The Defendants filed an Answer to the Complaint on February 18, 1997, and an Amended Answer on March 10. The Amended Answer asserts a counterclaim for judgment in favor of the Defendants on all counts of the Complaint, and requests the following additional relief: a declaration that the Lease has been terminated; an Order directing the Debtor to vacate the Premises; an award of immediate possession of the Premises to Windsor; and counsel fees and damages pursuant to the terms of the Lease.

On October 13, 1997 the Debtor filed the instant Motion for Partial Summary Judg-

---

**4.** Although the Order approving the Debtor's plan of reorganization is dated September 12, 1996, and was entered on September 13, 1996, the docket in the case does not reflect entry of this Order until December 30, 1996.

ment requesting judgment in its favor on Count I of the Complaint. In Count I, the Debtor contends that Windsor, LP deprived the Debtor of due process and violated its civil rights under 42 U.S.C. § 1983 by simultaneously confessing judgment against it and causing execution thereon to be issued without notice or opportunity for challenge prior to enforcement of such execution through the powers of the state.[5] The Debtor avers that Windsor, LP's actions proximately resulted in it having to file a Chapter 11 bankruptcy petition on January 4, 1995. The Debtor demands judgment against Windsor, LP on Count I for actual damages in the amount of $280,000, punitive damages in the amount of $500,000, and costs and attorney's fees.

The Court observes that the Debtor did not raise the fact of the May 1995 eviction in the Complaint itself. However, in its motion for partial summary judgment, the Debtor stresses that Windsor, LP caused the writ of possession to be reissued and thereafter caused the sheriff to enforce such writ by evicting the Debtor from the Premises on May 23, 1995. Windsor, LP did not contest these facts in its response to the Debtor's motion. The Court also observes that the legal theory articulated by the Debtor in its motion for partial summary judgment differs from that asserted in Count I of the Complaint. For instance, in the Complaint the Debtor alleged that its due process rights were violated by Windsor, LP's conduct of simultaneously confessing judgment and causing the issuance of execution thereon, *ex parte*, without notice or opportunity for challenge prior to its property being levied upon and seized by the sheriff in December 1994. Thus, the due process violation upon which the § 1983 claim asserted in the Complaint is based, is founded upon an alleged lack of notice prior to execution and seizure of its property. By contrast, in its motion the Debtor contends that Windsor, LP's entry of confessed judgments for both accelerated rent and possession of the Premises constituted an impermissible double recovery un-

der Pennsylvania law, and that because of such infirmity, the confessed judgments are unlawful and should not be accorded any legal effect. The Debtor argues that Windsor, LP committed a *per se* civil rights violation when it invoked the state's power to execute on and enforce the purportedly unlawful judgments by evicting the Debtor from the Premises in May, 1995. Significantly, in both its motion and in its response to the Defendants' Cross Motion, the Debtor specifically argues that its § 1983 claim is not based on any alleged lack of notice prior to execution and enforcement of the writ of possession, but rather, solely on its contention that Windsor's execution on the purportedly unlawful judgments constitutes a *per se* civil rights violation.

The Defendants contend that they are entitled to summary judgment in their favor on Count I of the Complaint on grounds that:

a) the Debtor's claims are barred by principles of both equitable and judicial estoppel because the Debtor failed to raise or even disclose the claims before confirmation;

b) The Debtor's claims are barred by the applicable statute of limitations;

c) The Debtor may not recover on its claim for violation of its right to due process because the Debtor waived its right to pre-deprivation notice and because the Defendants were not acting in bad faith;

d) Improper use or abuse by a private party of an otherwise valid state procedure is not cognizable under 42 U.S.C. § 1983; and

e) The May 1995 eviction did not violate the Debtor's constitutional right to due process because the Debtor had five months to contest the judgment and failed to do so.

## DISCUSSION

The instant motion and cross motion for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure

---

5. The Debtor's accounts at CoreStates Bank were attached and the sheriff levied upon certain contents of the Debtor's restaurant in December 1994. Although a writ of possession was also issued and served on the Debtor at this time,

enforcement of such writ did not take place prior to the filing of the Debtor's Chapter 11 petition. As noted, the writ of possession was subsequently reissued on May 3, 1995, and enforced twenty days later on May 23, 1995.

("Fed.R.Civ.P.").[6] Pursuant to Rule 56, summary judgment should be granted when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). For purposes of Rule 56, a fact is material if it might affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The moving party has the burden of demonstrating that no genuine issue of fact exists. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

The court's role in deciding a motion for summary judgment is not to weigh evidence, but rather to determine whether the evidence presented points to a disagreement that must be decided at trial, or whether the undisputed facts are so one sided that one party must prevail as a matter of law. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 247–252, 106 S.Ct. at 2509–12. In making this determination, the court must consider all of the evidence presented, drawing all reasonable inferences therefrom in the light most favorable to the nonmoving party, and against the movant. *See United States v. Premises Known as 717 South Woodward Street,* 2 F.3d 529, 533 (3rd Cir.1993); *J.F. Feeser, Inc. v. Serv–A–Portion, Inc.,* 909 F.2d 1524, 1531 (3d Cir.1990), *cert. denied,* 499 U.S. 921, 111 S.Ct. 1313, 113 L.Ed.2d 246 (1991); *Gould, Inc. v. A & M Battery and Tire Service,* 950 F.Supp. 653, 656 (M.D.Pa. 1997).

To successfully oppose entry of summary judgment, the nonmoving party may not simply rest on its pleadings, but must designate specific factual averments through the use of affidavits or other permissible evidentiary material that demonstrate a triable factual dispute. *Celotex Corp. v. Catrett,* 477 U.S. at 324, 106 S.Ct. at 2553; *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 247–50, 106 S.Ct. at 2509–11. Such evidence must be sufficient to support a jury's factual determination in favor of the nonmoving party. *Id.* Evidence that merely raises some metaphysical doubt regarding the validity of a material fact is insufficient to satisfy the nonmoving party's burden. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). If the nonmoving party fails to adduce sufficient evidence in connection with an essential element of the case for which it bears the burden of proof at trial, the moving party is entitled to entry of summary judgment in its favor as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. at 322–23, 106 S.Ct. at 2552–53.

■ As a threshold matter the Court shall address Windsor, LP's argument that the Debtor's claims under 42 U.S.C. § 1983 are untimely, and therefore barred, as being filed after the passage of the applicable statute of limitations. The parties are in agreement, and correctly assert, that the limitations period applicable to the Debtor's § 1983 claims is the Pennsylvania two-year statute of limitations for personal injury actions. *Kost v. Kozakiewicz,* 1 F.3d 176, 188 (3d Cir.1993)(citing *Wilson v. Garcia,* 471 U.S. 261, 280, 105 S.Ct. 1938, 1949, 85 L.Ed.2d 254 (1985)); *Herbert v. Reinstein,* 976 F.Supp. 331, 336 (E.D.Pa.1997); 42 Pa.C.S.A. § 5524. Although federal law applies the state personal injury statute of limitations to § 1983 claims, federal law governs the question of when such claims accrue. *Newcomb v. Ingle,* 827 F.2d 675 (10th Cir.1987); *Sevier v. Turner,* 742 F.2d 262, 272 (6th Cir.1984). In § 1983 cases concerning deprivation of property, the violation of one's civil rights accrues when the property is seized. *See Gilbert v. City of Cambridge,* 932 F.2d 51, 57 (1st Cir. 1991); *Johnson v. Cullen,* 925 F.Supp. 244, 249 (D.Del.1996); *Shannon v. Recording Indus. Assn. of America,* 661 F.Supp. 205, 210–11 (S.D.Ohio 1987).

■ Although it initially appeared to the Court upon reading Count I of the Complaint that the Debtor was asserting § 1983 claims stemming from the December 1994 execution on the confessed judgments, e.g., attachment

---

6. Fed.R.Civ.P. 56 is applicable to the instant proceeding pursuant to Rule 7056 of the Federal Rules of Bankruptcy Procedure ("Fed.R.Bankr. P.")

of the Debtor's bank accounts and a sheriff's levy being placed on certain of its restaurant equipment, the Debtor clarified in both its Motion for Partial Summary Judgment, and in its response to the Defendants' cross motion, that the § 1983 claims for which it seeks redress in Count I stem from the May 23, 1995 eviction. Since the Complaint commencing this adversary proceeding was filed on January 15, 1997, less than two years after the occurrence of the May 1995 eviction, the claim asserted in Count I is timely.

Count I of the Complaint alleges .claims arising under 42 U.S.C. § 1983. In general, § 1983 provides a civil remedy against any person who, acting under color of state law, deprives another of rights protected by the Constitution or the laws of the United States. More specifically, § 1983 states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

■ The analysis of a § 1983 claims begins with the acknowledgment that the statute is not itself a source of substantive rights, but merely provide a method for vindicating federal rights that are elsewhere conferred. *Albright v. Oliver*, 510 U.S. 266, 271, 114 S.Ct. 807, 811–12, 127 L.Ed.2d 114 (1994). Thus, in order to prevail on a·claim under § 1983, a plaintiff must establish: 1) that a

federally protected statutory or constitutional right has been violated; and 2) that such violation occurred by virtue of state action or under color of state law. *Jordan v. Fox, Rothschild, et al.,* 20 F.3d at 1264 (citing *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 156, 98 S.Ct. 1729, 1733, 56 L.Ed.2d 185 (1978)). Where the defendant is a private individual who asserts a defense of good faith, the plaintiff must also establish that such party acted with a subjective intent to deprive the plaintiff of a federally protected right. *Id.,* at 1276–1278.[7] The burden of persuasion with respect to the foregoing criteria rests with the plaintiff. *Id.* at 1278.

The first step in the above analysis is to identify the specific constitutional or federal right allegedly infringed. *Albright,* 510 U.S. at 271, 114 S.Ct. at 811–12. In this case, the Debtor contends that Windsor, LP's execution and seizure of the Premises in May 1995, through the powers of the state, violated its constitutional right to due process. Although the Debtor did not specify in the Complaint whether the alleged violation was to its substantive or procedural due process rights, the Court observes that the parties have presented arguments solely on the issue of whether a procedural due process violation occurred. Any argument that the Debtor's substantive due process rights were also violated has therefore been waived, and the Court will proceed to address the procedural due process issues that have been joined by the parties in their cross motions for summary judgment.

■ The Debtor's § 1983 claim can be summarized as follows: the re-issuance of the writ of possession and actual seizure of its property by the sheriff in May 1995, on the basis of what the Debtor contends is an unlawful confessed judgment for possession, resulted in the deprivation of its property without due. process of law. In the Debtor's Memorandum in support of its Motion for Partial Summary Judgment, and again in its Response to Windsor, LP's Cross Motion, the Debtor makes clear that its § 1983 claim is not based on any alleged lack of notice prior to the enforcement of the writ of pos-

---

7. Thus, the Defendants' statement of the law—to the effect that a § 1983 plaintiff must establish a private actors' subjective "bad faith" as a third element of its prima facie case—is incorrect.

session. Rather, the Debtor contends that execution and seizure of its property based on the purportedly unlawful judgment constitutes a *per se* civil rights violation. Thus, the Debtor has abandoned the argument that its § 1983 claim is based, at least in part, on Windsor, LP's alleged failure to provide notice or opportunity for a hearing prior to the seizure of its property.[8]

The Debtor's entire case, therefore, rises or falls on the theory that its due process rights were violated because Windsor, LP executed on judgments that the Debtor contends are unlawful. The Debtor cites no case law that directly supports this position. Although the Debtor correctly asserts that confessing judgment for both accelerated rent for the remaining unexpired term of a lease and for possession of such demised property constitutes an impermissible double recovery under a long line of Pennsylvania authorities, *see e.g., Homart Development*

Co. *v. Sgrenci,* 443 Pa.Super. 538, 662 A.2d 1092, 1100–02 (1995) (citations omitted), the remedy in such a situation would not be, as the Debtor contends, the nullification of the lease provisions which set forth the landlord's remedies for a breach or default by a tenant, but rather the opening or striking, in whole or in part, of the offending portions of the judgments entered pursuant to such provisions of the lease. Pa.R.Civ.P. Rule 2959. Thus, in the *Homart* case, the Pennsylvania Superior Court, after finding that the landlord had confessed judgments for both accelerated rent and for possession, stated that while the tenant failed to file a petition to strike the judgment and thus waived such relief, the money judgment should have been opened and the issue of the amount of such judgment submitted to a jury. 662 A.2d at 1101–02.

The Debtor also cites *American Assn. of Meat Processors v. Casualty Reciprocal Ex-*

8. Even assuming arguendo that the Debtor had not abandoned pre-deprivation notice as an issue in the case, the Court would nonetheless still have determined that, based on the record presented, the Debtor waived the right to receive such pre-deprivation notice. In *Swarb v. Lennox,* 405 U.S. 191, 92 S.Ct. 767, 31 L.Ed.2d 138 (1972), and *D.H. Overmyer Co., Inc. v. Frick Co.,* 405 U.S. 174, 92 S.Ct. 775, 31 L.Ed.2d 124 (1972), the United States Supreme Court plainly decided that a debtor may waive its due process rights to pre-deprivation notice and a hearing when it voluntarily, knowingly and intelligently executes an agreement containing a cognovit clause or a warrant to confess judgment. Both *Swarb* and *Overmyer* also indicate that waiver is usually, though not always, a question of fact. *Jordan,* 20 F.3d at 1272 (citations omitted).

In *Jordan* the Third Circuit Court of Appeals stated that "a court faced with a due process challenge to a confessed judgment should always inquire whether the judgment debtor's execution of a document permitting judgment by confession is a valid waiver of his constitutional right to pre-deprivation notice and hearing." *Id.* 20 F.3d at 1272 (citations omitted). The Third Circuit also stated in *Jordan* that where a party was represented by counsel when it agreed to a confession of judgment clause, operated in corporate form, and had agreed to the confession of judgment as part of a commercial lease, "an inference of waiver would be strongly supported." *Id.* at 1274. The Defendants ask the Court to make a similar inference in the instant case in support of their cross motion for summary judgment.

Under the test set forth in *Jordan,* this Court must determine whether the undisputed material

facts "establish that [the Debtor] did not knowingly waive its due process right to pre-judgment notice and hearing." *Id.* at 1272. The Court observes that the Complaint does not allege any disparity in bargaining power, a lack of advice from counsel, or any other misunderstandings. Moreover, the Debtor does not allege that it failed to understand the confession of judgment clause in the Lease or that it entered into such agreement involuntarily. Indeed, the Debtor's counsel in the transaction testified in a deposition, that although it was his opinion that the provision in the Lease permitting Windsor, LP to confess judgment and issue execution for both accelerated rent and possession of the Premises was probably unenforceable, and that he so advised the principals of the Debtor, he also testified that he was satisfied that the principals had been given sufficient information to understand the significance of the provision. *See* Defendants' Response and Cross Motion, Exhibit 18, at pp. 54, 64–65. Rather, the Debtor argues that Windsor, LP improperly confessed judgment against it for both accelerated rent and for possession of the Premises. Whether Windsor, LP improperly confessed judgment, however, is not relevant to the issue of whether the plaintiff waived its constitutional rights in the agreement. *See Jordan,* 20 F.3d at 1274. The latter issue is relevant solely to the determination of the validity of the plaintiff's state law claims which are not presently before the Court. The Court also notes that, as discussed more fully in text *infra,* the Debtor's argument that the cognovit clause is *"void ab initio"* as being against public policy, and that it cannot therefore be relied upon as the basis of a waiver is incorrect as a matter of law.

*change,* 527 Pa. 59, 588 A.2d 491 (1991) and *Finkle v. Gulf & Western Mfg., Co.,* 744 F.2d 1015 (3d Cir.1984). In *American Assn. of Meat Processors,* the Pennsylvania Supreme Court reversed two lower court rulings enforcing an insurance contract that required payment of insurance premium rebates to certain of the insured parties through their business association. *American Assn. of Meat Processors* is inapposite to the instant case in that the contract which required payment of the insurance premium rebates was determined to be illegal as violating both certain provisions of the Pennsylvania insurance law and the public policy underlying the system of workers compensation insurance in Pennsylvania. 588 A.2d at 495–96. The most that can be said about the money judgment in the instant case is that it was grossly excessive in light of Windsor, LP having also obtained judgment for possession of the Premises. *See Homart,* 662 A.2d at 1101–02. As discussed *supra,* this infirmity may be corrected by a petition to open or strike the judgment under Pa.R.Civ.P. 2959. *Finkle* involved a long term lease of real estate that required the lessee to pay a sum certain to the landlord in the event the lessee failed to exercise an option to renew the lease. It was alleged that the amount of the termination payment corresponded to the balance remaining on amounts the lessor had spent to expand the building for the lessee. In upholding the district court's dismissal of the landlord's claim for termination damages on grounds that it violated Pennsylvania's rule against contractual provisions that establish penalties, the Third Circuit observed that the landlord had already regained possession of the property and had relet the premises at an increased rental sufficient in amount to permit it recoup its investment in the building expansion.

■ Both *American Assn. of Meat Processors* and *Finkle* are also inapposite in that they involved direct appeals of underlying judgments, and were not collateral attacks on such judgments. Such is not the case here. Under Pennsylvania law a judgement by confession is an act of court that, until set aside or reversed in an appropriate proceeding instituted for that purpose, e.g. petition to open or strike brought pursuant to Pa.R.Civ.P.

2959, has all the qualities and effect of a judgment entered upon a verdict. *See Zhang v. Southeastern Financial Group, Inc.,* 980 F.Supp. 787, 792 (E.D.Pa.1997); 20 P.L.E. Judgment § 17 (West 1990). This Court does not sit as an appeals court of state court judgments, and in the absence of allegations of fraud, deception, accident or mistake in the procurement of a state court judgment—no such allegations are present in the instant case—it cannot entertain a collateral attack on an otherwise valid state court judgment. *See Jordahl v. Democratic Party of Virginia,* 122 F.3d 192, 202–03 (4th Cir. 1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 856, 139 L.Ed.2d 756 (1998); *In re DuFrayne,* 194 B.R. 354, 368–69 (Bankr.E.D.Pa. 1996).

■ Although a § 1983 plaintiff is not required to exhaust state court remedies prior to asserting its federal claims, the Debtor in the instant case has asserted a § 1983 claim based on the purported invalidity under Pennsylvania law of the judgments which gave rise to the execution and seizure of the Premises in May 1995. As discussed above, under Pennsylvania law a judgement by confession is an act of court, and until such time as it has been set aside or reversed, it has all the qualities and effect of a judgment entered upon a verdict. *See Zhang,* 980 F.Supp. at 792. It appears, therefore, that at the time that Windsor, LP enforced its writ of possession in May 1995, its confessed judgments had not been made the subject of a proceeding to strike or open, and for this reason the judgments remained enforceable by means of execution. *See Id.; see also* 49 C.J.S., Judgments, § 177 (West 1997) (judgment by confession supports an execution). This is not to say of course that the Defendants might not be liable to the Debtor under a state law cause of action. Such claims, if any, are not before the court at this juncture. Based on the foregoing, however, Windsor, LP's enforcement of its judgment did not give rise to a § 1983 claim. Accordingly, the Defendants are entitled to summary judgment in their favor on Count I of the Complaint.

Even if the Court were to have found that the proofs presented in connection with the instant cross motions supported the Debtor's claim that its due process rights were violated by the Defendants, the Court would nonetheless conclude that under the circumstances present in the case the Debtor is estopped from pursuing such claim by application of the doctrines of equitable and judicial estoppel. The foregoing doctrines are judicially created rules that serve the common purpose of protecting the fairness and integrity of judicial proceedings. Equitable estoppel focuses on the relationship between the parties and prevents a party from assuming a position inconsistent with an earlier position upon which another party reasonably relied. *See Godwin v. Schramm,* 731 F.2d 153, 160 (3d Cir.), *cert. denied sub nom., Behrend v. Godwin,* 469 U.S. 882, 105 S.Ct. 250, 83 L.Ed.2d 187 (1984); *see also, Novelty Knitting Mills, Inc. v. Siskind,* 500 Pa. 432, 457 A.2d 502, 503 (1983) ("Equitable estoppel is a doctrine that prevents one from doing an act differently than the manner in which another was induced by word or deed to expect. . . . [It] recognizes that an informal promise implied by one's words, deeds or representations which leads another to rely justifiably thereon to his own injury or detriment, may be enforced in equity."). Judicial estoppel, on the other hand, is concerned with the connection between a party and the judicial system itself. Judicial estoppel prevents a party from assuming a position in one proceeding that is inconsistent with a prior position asserted by that party either in the same or in an earlier proceeding. *McCarron v. F.D.I.C.,* 111 F.3d 1089, 1097 (3d Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 689, 139 L.Ed.2d 635 (1998); *Government of the Virgin Islands v. Paniagua,* 922 F.2d 178, 183 (3d Cir.1990); *Oneida Motor Freight, Inc. v. United Jersey Bank,* 848 F.2d 414, 419 (3d Cir.1988). The purpose of judicial estoppel is to prevent a party from playing "fast and loose" with the courts. *United States v. Vastola,* 989 F.2d 1318, 1324 (3d Cir.1993). The determination of whether to apply either doctrine in a particular case lies within the sound discretion of the trial court.

In order to prevail on a claim of equitable estoppel, the party asserting such claim must establish that: (1) a representation of material fact was made to the party; (2) such party had a right to, and did, rely on the representation; and (3) that denial of the representation by the party making it would injure the relying party. *See Haymaker v. Green Tree Consumer Discount Co.,* 166 B.R. 601, 605–06 (Bankr.W.D.Pa.1994) (citing *Wheeling–Pittsburgh Steel Corp. v. McCune,* 836 F.2d 153, 162–63 (3d Cir.1987)); *In re Crain,* 158 B.R. 608, 612 (Bankr.W.D.Pa. 1993). The first of these criteria can be satisfied by conduct that amounts to a false representation or concealment of a material fact. *See generally In re Atlantic Marble, Inc.,* 126 B.R. 463, 467 n. 1 (Bankr.E.D.Pa. 1991). The knowing failure of a party to disclose a material fact under circumstances wherein such party had both the duty and an opportunity to speak, may, where no plausible explanation or excuse for such silence exists, be construed as a false representation or concealment by such party. As discussed by the Third Circuit Court of Appeals in *Oneida,* a debtor in bankruptcy has an affirmative duty under Code § 521 to fully disclose all assets and interests in property. 848 F.2d at 416–17. Moreover, the foregoing disclose obligation continues throughout the case and requires the debtor to amend its schedules whenever it becomes necessary in order to insure the accuracy and reliability of the information disclosed therein. Additionally, debtors in Chapter 11 are obligated to file a disclosure statement containing "adequate information." The term "adequate information" is defined under Code § 1125(a) as "information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor . . . that would enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan. . . ." 11 U.S.C. § 1125(a).

A review of the Debtor's bankruptcy schedules and statement of financial affairs, as well as its plan of reorganization and disclosure statement reveals that the Debtor did not satisfy the foregoing duties of providing full disclosure and adequate information. Reminded that in Count I of the Complaint

the Debtor contends that its bankruptcy case was precipitated by the purportedly unlawful prepetition conduct of the Defendants, e.g., entry of confessed judgments for both possession and accelerated rent and issuance of execution thereon, it appears that Schedule B of the Debtor's petition is deficient in not listing, at the very least, a contingent or unliquidated claim, or right to setoff against Windsor, LP stemming from such conduct. Moreover, on Schedule D the Debtor listed Windsor, LP as a secured creditor holding an undisputed claim in the amount of $37,000, of which $13,000 was unsecured due to the value of the collateral. Omitted from Schedule F is the $198,261.78 confessed judgment entered against the Debtor just days before by Windsor, LP. The Debtor was admittedly aware of the foregoing judgment when the petition was filed.

More significant, however, was the Debtor's failure to include any specific reference to its purported § 1983 claim anywhere in either the plan or disclosure statement filed on January 19,1996. Although Article IX of the plan refers to several potential causes of action, including bankruptcy actions under Code §§ 547, 548, 549 and 550, as possible funding sources for the plan, the language used in this section of the plan can at best be described as merely boilerplate. *See* Debtor's Response to Cross Motion, Exhibit C (reorganization plan). Indeed, placed in context, the oblique reference in the plan to causes of action other than the aforementioned statutory bankruptcy actions is downright misleading. In this regard, the Court observes that the plan provides for only a 15% distribution to unsecured creditors. In the liquidation analysis section of the disclosure statement, the Debtor opines that if the case were converted to Chapter 7 and its assets, including any causes of action, were liquidated by a trustee, unsecured creditors should expect to receive nothing on their claims after administrative, secured, and priority claims are paid. From the perspective of one reviewing the information provided in the schedules, the disclosure statement and the plan, one can only conclude that the Debtor did not place much stock in any of the potential causes of action as possible funding sources for the plan. Certainly, no

one reviewing the information provided, the Court included, would have been able to discern that a cause of action of potentially sufficient value to pay everyone in the case in full was looming just over the horizon. As events in this case unfolded, however, approximately four months after the plan was confirmed, the Debtor asserted such a cause of action against the Defendants. Moreover, pursuant to the Article XI of the plan, upon confirmation title to such cause of action vested in the reorganized Debtor. *See Id.,* at ¶ 11.2. The Court also notes that the plan authorizes the reorganized Debtor to prosecute such claim. *Id.* Although the plan states that "all funds collected by the Debtor, with respect any and all Causes of Action as set forth in Article IX hereof, together with proceeds or collection of accounts receivable, shall be available for distribution under this Plan[,]", *id.,* at Art. VI, it must be remembered, however, that under the plan unsecured creditors are entitled to receive only 15% of the allowed amount of their claims, and arguably will not, therefore, share in any recovery obtained by the Debtor in excess of such plan payment amount, no matter how large the Debtor's recovery might be on any of the causes of action purportedly preserved under Article XI. *See* Code § 1141(a). Based on the foregoing, the Court concludes that the plan and disclosure statement, lacking any specific reference to a potential § 1983 claim against the Defendants, were "informationally deficient" and materially misleading, since they failed to alert creditors, other parties in interest, and the Court, to the fact that a claim of sufficient magnitude to pay all creditors in full existed and soon would be prosecuted. *See Oneida,* 848 F.2d at 418; *In re H & L Developers, Inc.,* 178 B.R. 71, 74–75 (Bankr.E.D.Pa.1994).

 Windsor, LP, as a party in interest, was entitled to rely on the representations and information contained in the Debtor's schedules and disclosure statement. *See Oneida,* 848 F.2d at 417–18; *see also, In re Scott,* 77 B.R. 636, 637 (Bankr.N.D.Ohio 1987) ("The information provided by a debtor in the several petition documents should not only be complete but truthful so that the Court and other parties in interest can rea-

sonably rely upon the data contained therein."). Moreover, such reliance was clearly to Windsor, LP's detriment in that Windsor, unaware that it was to become the target of a massive civil rights lawsuit filed by the Debtor, agreed to forbear from exercising the right it had been granted under the Order of February 9, 1995 to pursue its state court remedies against the Debtor.[9] Had the Debtor satisfied its statutory disclosure obligations under Code §§ 521 and 1125(a), and the true state of affairs been known, Windsor, LP would certainly not have agreed in September 1995 to withdraw its objection to the Debtor's assumption of the Lease, and thereafter refrain from exercising its state court remedies against the Debtor through the time the Debtor filed the instant adversary proceeding in January 1997. It is also inconceivable that Windsor, LP would have agreed to the Debtor's request, made on January 4, 1996, to extend the previously agreed upon January 1, 1996 payment deadline for the cure of the prepetition arrears, *see* Defendants' Response and Cross Motion, Exhibit 11, ¶ 7 (February 10, 1995 forbearance agreement), to April 1996. *Id.*, at Exhibit 4. Under the circumstances present in

this case, it would be unjust to permit the Debtor to retreat from the position advanced prior to confirmation concerning the existence and value of the claims it possessed against others. Accordingly, the Debtor is equitably estopped from pursuing the previously undisclosed § 1983 claim asserted against the Defendants in Count I of the Complaint.

■ Also applicable in the instant case is the doctrine of judicial estoppel. Judicial estoppel was first articulated in the Third Circuit in the seminal case *Scarano v. Central R. Co. of New Jersey*, 203 F.2d 510 (3d Cir.1953). The doctrine prevents a party from assuming a position that is inconsistent with a prior position taken either in the same or another proceeding. *See Government of the Virgin Islands v. Paniagua*, 922 F.2d at 183; *Oneida*, 848 F.2d at 419; *Scarano*, 203 F.2d at 512–13. Since judicial estoppel is intended to protect the courts rather than the parties, there is no requirement that the party urging estoppel demonstrate either that it relied on the other party's prior inconsistent statement, that it was a party or in privity with a party in the proceeding in

---

9. The Debtor argued that by virtue of a "tenant estoppel certificate" solicited by Windsor, LP in November 1996, Windsor knew at least two months prior to the confirmation order being signed that the Debtor intended to bring suit against it. *See* Debtor's Response to Cross Motion, p. 7, at n. 3. This argument, however, lacks merit for at least two reasons. First, as discussed in footnote four of this Opinion, the Order confirming the plan was signed on September 12, 1996, but not docketed until December 30, 1996. Since the estoppel certificate is dated November 11, 1996, it is clear that plan confirmation occurred prior to the certificate being issued. Thus, contrary to the Debtor's assertion above, Windsor, LP was not aware of the contents of the certificate prior to the plan being confirmed.

Turning to the language of the certificate, the Court observes that it states, in pertinent part, as follows:

 7. All obligations of Landlord under the Lease have been performed, and no event has occurred and no condition exists that, with the giving of notice or lapse of time or both, would constitute a default by Landlord under the Lease. There are no offsets or defenses that Tenant has against the full enforcement of the Lease by Landlord.

The foregoing language clearly refers to the obligations of the Landlord, and any perceived

breaches thereof, arising under the Lease. Directly below the language quoted above, the Debtor added the following handwritten notation: "Tenant believes that it has claims against Landlord." Construed most favorably to the Debtor, the handwritten notation provides a modicum of notice that the Debtor believes it has a claim or right against Windsor, LP pertaining to some perceived default by Windsor of its obligations under the Lease. Notably absent from the Debtor's notation is a clear statement that identified any specific claim or cause of action pertaining to alleged breaches of Windsor, LP's obligations under the Lease. Thus, despite the Debtor's assertion to the contrary, nothing in the estoppel certificate, including the Debtor's handwritten notation, can be construed as notice of an impending law suit arising out of any alleged breach of the Lease by Windsor, LP. More importantly, even assuming *arguendo* that the handwritten notation could be construed as placing Windsor, LP on notice that a lawsuit were imminent, there is nothing in the certificate that would inform Windsor to expect a lawsuit based on matters extraneous to the Lease, such as an alleged violation of the Debtor's civil rights. Accordingly, the existence of the certificate does nothing to affect the Court's analysis, nor does it change the conclusions reached in this Opinion.

which the prior statement was made, or even that the party making the statement benefitted in any way from its prior assertion. *See Ryan Operations G.P. v. Santiam–Midwest Lumber Co.,* 81 F.3d 355, 360–61 (3d Cir. 1996). In *Ryan,* the Third Circuit Court of Appeals further refined the doctrine by holding that it may be applied when: (1) the party against whom the doctrine is asserted has taken a position that is inconsistent with an earlier position taken by such party in either the same or a previous proceeding; and (2) the party asserted either or both of the inconsistent positions in bad faith, i.e., with intent to play fast and loose with the courts. *Id.* at 361.

As discussed more fully in connection with the equitable estoppel argument, the Debtor represented in the disclosure statement and plan that, at best, the causes of action referenced in Article IX of the plan, when combined with amounts obtained from accounts receivable collections and post-confirmation operations, would enable the Debtor to pay unsecured creditors only 15% of the allowed amount of their claims. That the Debtor meant to convey the impression to creditors and the Court that the causes of action were not worth very much is confirmed by the liquidation analysis contained in the disclosure statement. There, the Debtor stated that if the plan were rejected and the Debtor's business operations were not considered as a funding source, insufficient funds would be generated from a straight liquidation of the Debtor's assets, including a liquidation of any causes of action, to pay anything to unsecured creditors. Based on the foregoing representations the plan was confirmed. Approximately four months later, however, the Debtor changed its position and asserted a civil rights claim against the Defendants containing a demand for judgment in excess of $750,000. Such claim, if successful would be more than sufficient to pay all of the Debtor's creditors in full. Thus, the filing of the civil rights claim four months after the plan was confirmed constituted a change of position that satisfied the first of the requirements for application of judicial estoppel.

The Court finds that the bad faith element mandated by the *Ryan* decision is satisfied here as well. While a person's motivation or intent is generally considered to be a question of fact which is not ordinarily subject to resolution on a motion for summary judgment, *see e.g., Richardson v. Kraft–Holleb Food Service, Inc., a Div. of Philip Morris, Inc.,* 774 F.Supp. 1108, 1111 (N.D.Ill.1991), *aff'd,* 998 F.2d 1016 (7th Cir. 1993); *Banco Nacional De Cuba v. Chemical Bank New York Trust Co.,* 658 F.2d 903, 913 (2d Cir.1981), intent may be inferred when the evidence is so one sided that reasonable minds could not differ as to the only rational outcome. *See e.g., Paragon Podiatry Lab., Inc. v. KLM Labs., Inc.,* 984 F.2d 1182, 1190 (Fed.Cir.1993). Under circumstances such as these the factual issue of intent can be decided by the court as a matter of law. *Id.* Moreover, statements or conduct of the debtor evincing a reckless disregard for the truth satisfies the element of intent. *See In re Anastas,* 94 F.3d 1280, 1286 (9th Cir.1996) (reckless disregard for the truth satisfies the intent element for purposes of a Code § 523(a)(2)(A) nondischargeability claim).

As discussed above, the plan in this case provides for a distribution to unsecured creditors worth only 15% of the allowed amount of their claims. The clear implication of the representations made in the Debtor's bankruptcy schedules and statement of financial affairs, as well as its reorganization plan and disclosure statement is that the causes of action the Debtor possessed and was going to prosecute in consummation of the plan were not valuable enough to pay even the barely nominal 15% distribution on their claims if the Debtor were not permitted to remain in business and fund the plan through post-confirmation operations. Only four months after confirmation, the Debtor filed its § 1983 claim against the Debtor seeking damages in excess of $750,000. Under the plan title to this cause of action revested in the Debtor upon confirmation. Unsecured creditors having accepted the treatment provided for their claims in the plan, would have no legal right to share in any excess proceeds derived by the Debtor from the lawsuit. It is undeniable that at the time of confirmation all of the material facts upon which the § 1983 claim is based were known to the Debtor. The Debtor has not offered to ex-

plain either its failure to amend its bankruptcy schedules to reflect a potential § 1983 claim against the Defendants, or the omission from the plan of a specific reference to such a significant cause of action. Rather, the Debtor has argued only that Article IX of the plan contained a sufficient description of the causes of action that the Debtor was reserving the right to assert post-confirmation. The Court, however, has already determined that such disclosure was factually deficient.

The Court finds the circumstances present here to be strikingly similar to the situation faced by First Circuit Court of Appeals in *Payless Wholesale Distributors, Inc. v. Alberto Culver (P.R.) Inc.*, 989 F.2d 570 (1st Cir.), *cert. denied*, 510 U.S. 931, 114 S.Ct. 344, 126 L.Ed.2d 309 (1993). The following excerpt from that opinion is particularly germane to the matter *sub judice:*

> The basic principle of bankruptcy is to obtain a discharge from one's creditors in return for all one's assets, except those exempt, as a result of which creditors release their own claims and the bankrupt can start fresh. Assuming there is validity in Payless's present suit, it has a better plan. Conceal your claims; get rid of your creditors on the cheap, and start over with a bundle of rights. This is a palpable fraud that the court will not tolerate, even passively. *See, e.g., In re H.R.P. Auto Center, Inc.*, 130 B.R. 247, 253–54 (Bankr. N.D.Ohio 1991) (collecting cases). *Payless, having obtained judicial relief on the representation that no claims existed, can not now resurrect them and obtain relief on the opposite basis.*

989 F.2d at 571 (emphasis added).

Similar to the situation present in *Payless,* and the *Oneida* case from our own Circuit, the Debtor failed to disclose to its creditors, prior to confirmation, the existence of a rather significant claim that would have inured to their benefit. Had the existence of the claim been disclosed in accordance with the Debtor's obligations under § 521 and 1125(a), plan voting in the case would likely have been different. As in both *Payless* and *Oneida,* the undisclosed claim involved allegations that a particular creditor's conduct precipitated the filing of the bankruptcy case and that substantial damage to its business occurred as a result. Accordingly, all of the facts underlying the claims were available and known to the debtor well before confirmation. The only reasonable conclusion to be drawn from the forgoing is in failing to disclose its § 1983 claim prior to confirmation the Debtor sought to preserve for its own uses, to the exclusion of its creditors, any recovery it might obtain upon a successful prosecution of such claim. Such manipulation of the bankruptcy system constitutes bad faith, and cannot be countenanced. At the very least, the Debtor's conduct evinces a reckless disregard for the rights of creditors and its statutory duties to provide accurate and sufficiently detailed information at various stages in the Chapter 11 bankruptcy process. The failure to comply with these duties, under the circumstances present in this case, evinces the Debtor's intent to play fast and loose with the court. *Accord Welsh v. Quabbin Timber, Inc.*, 199 B.R. 224 (D.Mass.1996) (precluding a debtor from asserting, after its discharge had been entered, a claim against a creditor that was not listed anywhere in the debtor's schedules).

In light of the Court's findings with respect to both the legal sufficiency of the Debtor's § 1983 claim, and the applicability of the doctrines of equitable and judicial estoppel to bar the assertion of such claim in this case, it is not necessary to give further consideration to the additional arguments made by the parties. Moreover, based on the foregoing conclusions, summary judgment is granted in favor of the Defendants and against the Debtor on Count I of the Complaint.