# STATE OF MICHIGAN

# COURT OF APPEALS

---

*In re* Estate of MORRIS.

---

Estate of STANLEY MORRIS,

        Plaintiff-Appellant,

v

MARY MORRIS,

        Defendant-Appellee.

UNPUBLISHED
May 1, 2018

No. 336304
Oakland Probate Court
LC No. 2013-350325-DE

---

Before: BORRELLO, P.J., and SHAPIRO and TUKEL, JJ.

SHAPIRO, J. (*dissenting*).

I respectfully dissent and would conclude that the trial court clearly erred in its factual findings and that the sums deposited in the account by the decedent did not constitute an inter vivos gift.

The Michigan Supreme outlined the elements of an inter vivos gift in *Osius v Dingell*, 375 Mich 605, 611; 134 NW2d 657 (1965):

> It may be stated generally that the three elements necessary to constitute a valid gift are these: (1) that the donor must possess the intent to pass gratuitously title to the donee; (2) that actual or constructive delivery be made; and (3) that the donee accept the gift. It is essential that title pass to the donee. As to delivery, it must be unconditional and may be either actual or constructive; the property may be given to donee or to someone for him. Such delivery must place the property within the dominion and control of the donee. This means that a gift inter vivos must be fully consummated during the lifetime of the donor and must invest ownership in the donee beyond the power of recall by the donor. As to acceptance, it is said that the donee is presumed to have accepted the gift where such is beneficial. [Citations omitted.]

The trial court's conclusion was not consistent with these requirements. The court appears to have concluded that Mary was more credible than her brother and that as a result, she must prevail. However, a review of the evidence demonstrates that the trial court's finding that

1

the decedent gifted the entire account to defendant was legally incorrect, and that its factual findings, at least in part, were clearly erroneous.[1] The only element of an inter vivos gift that was satisfied in this case is that defendant accepted the gift. Although there was evidence that the decedent allowed defendant to use the funds in the account, there was no evidence that he intended to pass title to defendant. This is because the decedent and Mel remained as joint owners with defendant on the account. Therefore, the interest in the account was not solely within defendant's dominion and control. "A gift inter vivos is not only immediate, but absolute and irrevocable." *In re Casey Estate*, 306 Mich App 252, 263; 856 NW2d 556 (2014) (quotation marks and citation omitted). Further, delivery was not unconditional. Because the decedent remained on the account until his demise, he could have recalled the gift at any time. This also supports the position that the gift was not fully consummated during the decedent's lifetime.

The sole evidence that the account was intended to be an inter vivos gift was defendant's testimony. There was no other evidence as to statements made by the decedent or any documentary evidence. Defendant's own testimony, however, is in part inconsistent with her own assertions. Defendant testified that she "loan[ed]" money to herself when she was laid off from her employment in January 2009. She also admitted to "loaning" herself some money from the account to make her mortgage payments. The probate court's explanation as to why defendant's use of the word "loan" for the mortgage payment was simply conjecture as it was unsupported by the record. Further, defendant testified that she asked the decedent for permission before using the funds in the account. Although defendant testified that the decedent subsequently told her to stop asking for permission, the fact that she asked for permission and used the word "loan," supports an inference that she knew that the funds were not hers.

All the other evidence weighed heavily against defendant's position. First, defendant never informed her siblings, or apparently anyone else, that she had received this large gift. Second, at the time the gift was allegedly made, defendant was seeking bankruptcy protection. Bankruptcy law mandates that she list all assets and that she amend her petition should new assets be obtained prior to discharge.[2] However, defendant failed to amend her petition or

---

[1] While this Court defers to the probate court on matters of credibility, *In re Conservatorship of Brody*, 321 Mich App 332, 336; ___ NW2d ___ (2017), where the probate court sits without a jury, its findings will be reviewed for clear error. *In re Estate of William*, 133 Mich App 1, 13; 349 NW2d 247 (1984). "A finding is clearly erroneous when a reviewing court is left with a definite and firm conviction that a mistake has been made, even if there is evidence supporting the finding." *In re Townsend Conservatorship*, 293 Mich App 182, 186; 809 NW2d 424 (2011). Legal conclusions drawn by the probate court are reviewed de novo. *Chapdelaine v Sochocki*, 247 Mich App 167, 169; 635 NW2d 339 (2001).

[2] The bankruptcy code requires a debtor to file a schedule of assets and liabilities, a schedule of current income and current expenditures, and a statement of the debtor's financial affairs. 11 USC 521(a)(1)(B). "[A] debtor in bankruptcy has an affirmative duty under [11 USC 521] to fully disclose all assets and interest in property." *In re Okan's Foods, Inc*, 217 BR 739, 753 (Bankr ED PA, 1998). Significantly, "the foregoing disclose obligation continues throughout the

otherwise advise the court or anyone interested in the proceeding about these newly obtained funds.[3] Third, she did not disclose the money she claims to have received from the decedent as an asset when she applied for unemployment benefits. And fourth, the decedent never removed her brother, Mel, as a joint owner on the bank account. As we stated in our prior opinion, "continuing Mel's status as a joint owner was entirely inconsistent with the decedent's alleged intent to keep his money out of his sons' hand."[4]

In concluding that Mel was not credible, the court placed much weight on Mel's failure to explain the fact that the account showed that "more monies came into the bank account than were deposited by [the decedent]." There was evidence that defendant deposited funds into the account. However, the dispute was not as to the funds defendant deposited in the account but the funds that belonged to the decedent. The trial court's reliance on the discrepancy of the total amount in the bank account is misplaced.

For all these reasons, I would conclude that the trial court's factual findings were clearly erroneous[5] and would remand for entry of judgment in plaintiff's favor and for the court to segregate from the estate any monies deposited in the joint account by defendant herself.

/s/ Douglas B. Shapiro

---

case and requires the debtor to amend its schedules whenever it becomes necessary in order to insure the accuracy and reliability of the information disclosed therein." *Id*.

[3] Plaintiff argues that defendant's failure to amend her petition mandates an application of judicial estoppel. At a minimum, it is clear this failure to reveal the alleged gift weighs very heavily against defendant's credibility.

[4] *Estate of Stanley Morris v Morris*, unpublished per curiam opinion of the Court of Appeals, issued August 11, 2016 (Docket No. 326507), p 10.

[5] I agree with the majority that plaintiff has not demonstrated judicial bias.